## Case No. 11,191.

### PITTS v. EDMONDS.

.[1 Biss. 168; [1] 2 Fish. Pat. Cas. 52.]

Circuit Court, E. D. Michigan. June Term, 1857.

PATENTS — COMBINATION OF KNOWN MECHANICAL POWERS—IMPERFECT MACHINE — PATENTABILITY —EQUIVALENTS—DEFENSE OF WANT OF NOVELTY —NOTICE.

1. At law, a notice is essential to authorize the defense of want of novelty. In chancery the rules of pleading equally require the same matter to be set up.

[Cited in Brown v. Hall, Case No. 2,008.]

2. The most valuable inventions consist in the combination of known mechanical powers. Every part of such inventions may be found in some form, among the various devices of human ingenuity, and the man who unites these powers, and produces a new and important result to society, is well denominated a public benefactor.

3. It is not the man who may form an imperfect machine, which may suggest to a higher order of mind, valuable ideas, but it is the one who embodies those ideas in a practical and working form, whom the law protects.

4. A patent, in calling for a specific mode, embraces in law all mechanical equivalents, or modes which operate on the same principle; consequently all modes, however changed in form, but which act substantially on the same principle, and effect the same end, are within the patent. If this were not so, a patent right would be of no value, as it might be avoided by any one who possessed ordinary mechanical skill.

[Cited in Odiorne v. Denney, Case No. 10,-431.]

This was a bill in equity, filed to restrain the infringement of letters patent granted to William Woodworth, December 27, 1828, for improvements in planing and tonguing and grooving machines, more particularly referred to in the case of Foss v. Herbert [Case No. 4,957].

S. A. & D. Goodwin, Jr., for complainant.

S. S. Fisher, of counsel for complainant, filed the following brief:

The complainant shows a prima facie case of exclusive right, exemplification of the letters patent, and the defendant's stipulation as to title. Act 1836, § 4 (5 Stat. 117); Curt. Pat. §§ 30, 39; Alden v. Dewey [Case No. 153]; Woodworth v. Sherman [Id. 18,019]; Stearns v. Barrett [Id. 13,337]; 2 Robb. Pat. Cas. 297; Winter v. Wells, Webst. Pat. Cas. 129; 2 Greenl. Ev. § 473.

As to what is an infringement, vide Curt. Pat. §§ 220–222, and cases cited; Walton v. Potter, Webst. Pat. Cas. 586, note; Wyeth v. Stone [Case No. 18,107]; Odiorne v. Winkley [Id. 10,432]; Buck v. Hermance [Id. 2,082]; Curt. Pat. § 224; Washburn v. Gould [Case No. 17,214]; Woodworth v. Edwards [Id. 18,-014]; Woodworth v. Rogers [Id. 18,018]; Sloat

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

v. Spring [Id. 12,948a]; Motte v. Bennett [Id. 9,884]; Whittemore v. Cutter [Id. 17,601].

The above cases show clearly that Mr. Wilder, by his patent set up in the answer and shown in Exhibit G to defendant's testimony, gained no right, on account of his improved mode of feeding, to use our pressure rollers and cutters together, which construction is the essence of our invention. They also show very fully that the gearing of our rollers, so as to make them aid in feeding, does not take from them their character and effect as pressure rollers, and acting in a double function.

Nor does the inclination of the rollers, ¼ inch in 20 inches, spoken of by one witness (Wilder), change at all their character. They do the same office still, that is, they hold the board steady, &c. Such a change is merely formal, and not so great as the mechanical equivalents and analogous devices condemned in the following cases: Gibson v. Harris [Case No. 5,396]; Gibson v. Van Dresar [Id. 5,402]; or as the springs in Foss v. Herbert [supra]; or as in placing the cylinder diagonally across the face of the board; and as in the rollers inclined in Sloat v. Spring, supra.

The use by the defendant of the tonguing and grooving part of Woodworth's patent without the planing is an infringement. The point was, in fact, ruled in this case on the motion for injunction. But, if now open for argument, I refer to Foss v. Herbert, supra, where Judge Drummond ruled the very point in his charge to the jury; and also to the following authorities: Curt. Pat. § 245, and note, and cases cited; Moody v. Fiske [Case No. 9,745]; Pitts v. Whitman [Id. 11,196]; Curt. Pat. §§ 110, 111, and notes; Wilson v. Rosseau, 4 How. [45 U. S.] 646, 2 Robb, Pat. Cas. 372; Wyeth v. Stone [supra]; Root v. Ball [Case No. 12,035]; Hogg v. Emerson, 11 How. [52 U. S.] 587, 2 Robb, Pat. Cas. 655; Gibson v. Betts [Case No. 5,390]; Brooks v. Fiske, 15 How. [56 U. S.] 212; Wilson v. Barnum [Case No. 17,787]; Potter v. Wilson [Id. 11,342]; Sloat v. Spring, supra.

The recitals of the specification are no evidence of a patent. Cow. & H. Notes, pt. 1, p. 160; Id. pt. 2, pp. 235, 236, and cases cited; O'Reilly v. Morse, 15 How. [56 U. S.] 62. Vide 5 Stat. 353 (Act 1839, § 6); Brooks v. Norcross [Case No. 1,957]; Act 1836, § 15 [5 Stat. 117].

There is nothing in either machine to shake the originality of the Woodworth machine. The Woodworth invention, after twenty-eight years of possession and most severe litigation before courts and juries in almost every circuit of the Union, has never been defeated on the merits, and the originality of the tonguing, &c., and planing, conceded as settled, on interlocutory argument. Vide Wilson v. Rousseau, 4 How. [45 U. S.] 646; Woodworth v. Wilson, Id. 712; Gibson v. Betts [supra]; Van Hook v. Pendleton [Case No. 16,851]; Gibson v. Gifford [Id. 5,395]; Gibson v. Van Dresar [supra]; Sloat v. Spring, supra; Bloomer v.

McQuewan,[2] Fed. Cas. Append.; Sloat v. Patton [Case No. 12,947]; Foss v. Herbert [Id. 4,-957]; Gibson v. Betts [supra].

The complainant is entitled to a decree for a reference to a master to report the amount due the complainant, with award of execution on confirmation of report, and with costs. Goodyear v. Day [Case No. 5,569]; Allen v. Blunt [supra]; Livingston v. Woodworth, 15 How. [56 U. S.] 546. For form of decree, see Motte v. Bennett [Case No. 9,884].

Lockwood & Clark and Jas. V. Campbell, for defendants.

Before McLEAN, Circuit Justice, and WILKINS, District Judge.

McLEAN, Circuit Justice. This bill complains of an infringement of the Woodworth patent. It sets forth the original patent granted in 1828, the death of the patentee in 1839, administration of William W. Woodworth, a renewal of the patent in 1842, an extension by act of congress in 1842 [5 Stat. 543], to take effect December 27, 1849, and a surrender and a reissue of the patent on amended specifications in 1845, and a transfer of the patent by the administrator to Wilson, and by him to Pitts, the complainant.

In their answers, the defendants do not deny the invention of Woodworth, as to the planing machine, and admit that its validity has been established at law, but they deny from information and belief, that part of this invention, as distinct from the planing machine, which performs the operation of tonguing and grooving. This part of the combination only is in controversy in this case.

No patent in this country has been so much litigated as Woodworth's planing machine. While this affords the highest evidence of its value, it has involved the holder of the patent in an expense which would have been ruinous had not the renewals been granted, as above stated.

In every patent the originality of the invention may be considered open to controversy, as it depends upon facts which may be proved.

The construction of the patent being matter of law, establishes the right, on the facts proved, but, in a subsequent case, new facts may be proved, showing a prior invention of the same thing.

In his amended specifications. Woodworth claims the combination of the rotating planes with the cutter wheels, for the purpose of planing, tonguing and grooving boards, &c., at one operation as described; and also the combination of the cutter wheels for tonguing and grooving boards at one operation, as described. And finally, the combination of either the tonguing or grooving cutter wheels, for tonguing boards with the pressure rollers, as described,—the effect of the pressure rollers in the operation, being such as to keep the boards, &c., steady and pre-

vent the cutters from drawing the boards toward the center of the cutter wheel, while it is being moved through by machinery. In the planing operation the tendency of the plane is to lift the boards directly up against the rollers, but in the tonguing and grooving, the tendency is to overcome the friction occasioned by the pressure of the rollers.

The patent having been issued on an examination of the right claimed is prima facie evidence of such right.

Woodworth's machine consists of the combination of mechanical powers to plane, tongue and groove plank, at one operation, and he claims the planing as a distinct operation, and also the tonguing and grooving as distinct from that of planing.

In the numerous suits that have been prosecuted, the originality of this invention has not been successfully assailed. So far as regards the construction of Woodworth's patent, and his corrected specifications, it has been so frequently before the federal courts, that it can scarcely be considered now open for controversy.

No new light can, at this day, be expected on the nature and extent of Woodworth's patent. Its originality may be questioned by showing prior inventions; and when an infringement of it is charged, it must be tried by a comparison of the machines. Two machines have been set up in the evidence and argument, as same in principle as Woodworth's and of prior date. This is objected to on the ground that in the answer these machines are not referred to or relied on as affecting the complainant's right.

At law a notice may be given, and, indeed is essential to authorize such a defense. In chancery the rules of pleading equally require such matter to be set up.

Whether at law or in chancery, a defense in bar of the plaintiff's right must be set up, so as to enable the plaintiff to meet it.

In the case of O'Reilly v. Morse, 15 How. [56 U. S.] 110, the supreme court says, "This case must be decided by the testimony in the record, and we cannot go out of it and take into consideration a fact stated in a book of reports. Moreover, we have noticed this case merely because it has been pressed into the argument. The appellants do not mention it in their answer nor put their defense on it, and if the evidence of its priority was conclusive, it would not avail them in this suit, for they cannot be allowed to surprise the patentee by evidence of a prior invention, of which they gave him no notice."

But if the Shakers' machine and Muir's were in evidence, they would not invalidate Woodworth's. The former is rude in structure and impracticable. The Muir machine, it would seem from its organization, could not tongue and groove as the Woodworth machine is capable of doing. In tonguing and grooving Woodworth does it by one operation, and the board is subjected to the same pressure. In Muir's it is done by different tools, and at different spaces, and acting in

[2] [See same case on appeal, 14 How. (55 U. S.) 539.]

different ways on different spindles, and having different pressures, and in the last part of the operation there seems to be nothing to keep the board steady, consequently the work cannot be complete.

The value of Woodworth's machine consists not in the novelty of its parts, but in their combination. It is not enough to show that other machines have some parts more or less similar to those of Woodworth's. Every part of Woodworth's machine may be found in use in some mechanical operation. The most valuable inventions consist in the combination of known mechanical powers. Every part of such inventions may be found, in some form, among the various devices of human ingenuity, and the man who unites these powers and produces a new and important result to society is well denominated a public benefactor. It is not the man who may form an imperfect machine, which may suggest to a higher and more practical order of mind valuable ideas, but it is the one who embodies those ideas in a practical and working form whom the law protects.

Whether we examine the descriptions of the machines in controversy, the models furnished, or the opinions of the experts examined, it appears that the machines differ but little in the mode of their structure. The mode of advancing the plank to the cutters, by reciprocating clamps, is relied on mostly, as distinguishing the defendant's from the plaintiff's machine.

In the original written specifications of Woodworth's patent of 1828, there is no claim for pressure rollers on both sides of the cutting cylinder, which confine the board to its place; but in the drawings, these rollers appear at the proper places, and this is sufficient. But in the amended specifications these rollers are described in their combinations for planing, and also for tonguing and grooving. In his original specifications, Woodworth says: "The carriage which sustains the plank or board to be operated upon may be moved forward by means of a rack and pinion, by an endless chain or band, by geared friction rollers, or by any of the devices well known to mechanics for advancing a carriage, or materials to be acted upon in machines for various purposes."

It is said by the experts, that the combination of the cutter heads with the pressure rollers constitutes the invention of Woodworth for tonguing and grooving. Some of the experts say, that from their examination of the defendant's machine and also of Woodworth's specifications, they find the combination of Woodworth for tonguing and grooving in defendant's machine.

The effect of the pressure rollers is the same in both. They keep the board steady and prevent it being drawn toward the center of the cutter heads. The revolutions of the cutter wheels in each are from 2,500 to 3,000 strokes a minute.

Take out the surface planing knife from Woodworth's machine and there remains no difference between it and the defendant's machine for tonguing and grooving, except the mode of feeding. And the mode of feeding is mainly relied upon as showing a difference in principle between the two machines. But if the invention of Woodworth consists in the combination of the cutter heads with the pressure rollers, then it is clear there is an infringement, as the whole of the combination is used. And it is no less an infringement if the mode of forcing the board forward be an improvement on Woodworth's machine. In such a case the defendants would have no more right to use the invention of Woodworth than the plaintiff would have to use the improvement of Wilder.

But Woodworth in his specifications says: "In a single horizontal machine the friction rollers may be geared, and the pressure rollers placed above them, to feed the board, with or without the carriages." And again: "In the present instance, the plank is supposed to be advanced by means of one or two pairs of friction or feed rollers, shown at F. F. The uppermost F. F. of the pairs of rollers may be held down by springs or weights, levers, &c. The lowermost of these rollers may be fluted, or made rough on their surfaces, so as to cause friction on the underside of the plank." In the summing up he spoke of the pressure rollers as described, to keep the board steady, &c.

The entire specifications may be examined to ascertain the claim of the patentee. The specifications, and also the drawings constitute a part of the patent.

The claim of the "combination of the tonguing and grooving cutter wheels, for tonguing and grooving boards, and the combination of either the tonguing or the grooving cutter wheels, for tonguing or grooving boards, &c., with the pressure rollers as described," is a claim, not only for tonguing and grooving by one operation, but also for tonguing and grooving separately, with the pressure rollers.

The plank in tonguing and grooving, as well as in planing is moved against the cutting knives by rollers, which, in his original patent, is described as "geared friction rollers, to move forward the board." Now if the machinery to force the board against the cutting knives, in tonguing and grooving, or in planing, is in Woodworth's combination, can it be objected that the rollers are not, as often as named in the specifications called feeding rollers? They perform that office, and whether feeding, friction, or pressure rollers is immaterial. The machinery is there and the principle on which it operates is seen, and this is sufficient to sustain the patent.

The reciprocating, or eccentric clamps, as they are called, are in effect feed rollers. "Where one clamp is on the board to shove it ahead, the other one is drawing back to get a new hold, and is not in contact with the board." And in this way the clamps seize

the board alternately, and push it forward. At the same time they act as a pressure roller.

This is a clumsy attempt to avoid the Woodworth patent for tonguing and grooving, by the substitution of these clamps for the rollers of Woodworth, which propel the board on the cutting knives.

Woodworth calls for feed and pressure rollers, and says that the plank may be moved forward by other means. Now a patent, in calling for a specific mode, embraces in law all mechanical equivalents, or modes which operate on the same principle, consequently all modes, however changed in form, but which act substantially on the same principle, and effect the same end, are within the patent. If this were not so, a patent right would be of no value, as it might be avoided by any one who possessed ordinary mechanical skill.

As it appears from the evidence that the infringement of the plaintiff's patent was free from any aggravated circumstances, and was the result of a conviction by the defendants that they were protected by Wilder's patent under which they were licensed, they will be held responsible in damages only for the profits realized after a deduction of all expenses, &c., in carrying on their operations.