## Case No. 57.

### ADAMS v. JONES.

[1 Fish. Pat. Cas. 527;[1] 2 Pittsb. R. 73; 7 Pittsb. Leg. J. 170; Merw. Pat. Inv. 660.]

Circuit Court, W. D. Pennsylvania. Nov. 17, 1859.

#### PATENTS FOR INVENTIONS—APPLICATION—ABANDONMENT—NOVELTY.

1. By the application filed in the patent office, the inventor makes a full disclosure of his invention, and gives public notice of his claim for a patent. It is conclusive evidence that he does not intend to abandon his invention to the public.

[Cited in Blandy v. Griffith, Case No. 1,529; McMillin v. Barclay, Id. 8,902; Bevin v. East Hampton Bell Co., Id. 1,379; Johnsen v. Fassmen, Id. 7,365; Goodyear Dental Vulcanite Co. v. Willis, Id. 5,603; Colgate v. W. U. Tel. Co., Id. 2,995.]

2. A man might justly be treated as having abandoned his application if it be not prosecuted with reasonable diligence. But involuntary delays—the mistakes of public officers, or the delays of courts—not caused by the laches of the applicant, should not work a forfeiture of his rights.

[Cited in Blandy v. Griffith, Case No. 1,529; McMillin v. Barclay, Id. 8,902; Bevin v. East Hampton Bell Co., Id. 1,379; Johnsen v. Fassmen, Id. 7,365; Consolidated Fruit-Jar Co. v. Wright, Id. 3,135; Weston v. White, Id. 17,459; Woodbury Planing-Mach. Co. v. Keith, 101 U. S. 485, 17 O. G. 1033; Butler v. Shaw, 21 Fed. Rep. 327.]

3. If an inventor claims two distinct improvements in one machine, he may apply for them jointly, and have a single patent for both. If he has made a mistake as to one of the improvements claimed, but is clearly entitled to a patent as to the other, he cannot be justly said to have abandoned either during a litigation as to his right to both.

4. It is only when some person, by labor and perseverance, has been successful in perfecting some valuable manufacture, by ingenious improvements, or labor-saving devices, that his patent is sought to be annulled, by digging up some useless, rusty, forgotten contrivances of unsuccessful experiments.

[Cited in Electrical Accumulator Co. v. Julien Co., 38 Fed. Rep. 128.]

5. Patterson's patent for a concave, beveled keeper, is an immaterial variation of Adams' patent, worthless as an improvement, and palpably got up as a cover, and to give color to an invasion of the rights of the latter.

6. The novelty of Adams' patent for "improved keeper for right and left-hand door-locks" examined and affirmed.

[7. Cited in Goodyear Vulcanite Co. v. Willis, Case No. 5,603, to the point that if a party choose to withdraw his application for a patent, and pay the forfeit, intending at the time of such withdrawal to file a new petition, and he accordingly does so, the two petitions are to be considered as parts of the same transaction, and both as constituting one continuous application, within the meaning of the law.]

In equity. This was a bill in equity [by Calvin Adams against J. Hervey Jones, Alexander M. Wallingford, and another] for an injunction and account, founded upon the alleged violation and infringement of letters patent [No. 16,676,] for an "improved keeper for right and left-hand door-lock," granted to complainant February 24, 1857.

The claim of the patent was as follows:

"The use of a beveled keeper such as described, when employed in connection with a double-faced lock, having a blunt bolt, so that the lock may be used on a right or left-hand door, without changing any of its parts, as set forth."

Shaler & Co., Bakewell & Cushing, and E. M. Stanton, for complainant.

Stowe & Hampton, Geo. P. Hamilton, and George Gifford, for defendants.

Before GRIER, Circuit Justice, and McCANDLESS, District Judge.

GRIER, Circuit Justice. The complainant has a patent dated February 24, 1857, for an "improved keeper for right and left-hand door-locks." It purports to be an improvement in the manufacture of an article now known under the appellation of "Janus-faced door-locks." That species of lock was invented and patented by Sherwood. But in order to accommodate it to either a right or left-hand door, it was necessary to open it, so as to change the beveled side of the bolt. When this was done by a careless or inexperienced workman, the internal works of the lock were liable to become displaced. The object of complainant's invention is to obviate this difficulty. It is accomplished by making the bolt blunt, with rounded edges, and making a keeper, whose lip is an inclined plane the whole length of the keeper, so that the lock is available for either a right or left-hand door, without opening it to change the bolt, as the keeper may be turned with either side up, and catch the bolt. This is, undoubtedly, a valuable improvement in the manufacture of "Janus-faced door-locks," as it simplifies and cheapens the article. Drop-catch keepers had before used a slightly inclined plane on the lip of the keeper, but it could be used only for such a door as they were especially made for.

The original application for a patent for this invention was made by Adams, in 1850. In that application the invention (now pat-

---

[1][Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

ented) is clearly and distinctly set forth and claimed. But the applicant claimed also to be the inventor of other improvements. The commissioner of patents refused to grant him a patent for anything. An appeal was taken to the circuit court, and not decided by that court until 1856, when the decision of the commissioner was affirmed. Notwithstanding this, the original application was not withdrawn, and the applicant continued to insist upon his right to a patent for so much of the improvements claimed as was clearly his invention. A new commissioner of patents having the sagacity to see that the applicant had made a valuable invention, which had been overlooked by his predecessor, and rejected because the application had included other improvements of which the applicant was not the original inventor, very properly granted the patent now before us, as a valuable improvement in the manufacture of that species of locks called "Janus-faced."

The respondents, in their answer, allege three several grounds of defense.

1. They contend that the patent is void because the improvement therein claimed had been put in public use more than two years prior to the date of the patent.

2. That respondents do not infringe, but act under a patent granted to one Patterson in 1857.

3. That the improvement claimed is not new.

1st. As to the first point of defense. The testimony shows that the complainant made and sold locks with this improvement, more than two years before his patent, but after his original application filed in 1850. By this application, Adams fully disclosed to the public his invention, and gave notice of his intention to demand a patent. He ought not to lose his rights because of the want of perspicacity of the first commissioner. The delay in the decision of the appeal was not in consequence of any laches of complainants, but of the inability of the aged chief justice to attend to the business of his office. The reasons why courts have declared patents to be void, because the inventor had suffered his invention to be used by the public, before his application for a patent, are well stated in the case of Pennock v. Dialogue, 2 Pet. [27 U. S.] 1: "If an inventor should be permitted to hold back, from the knowledge of the public, the secrets of his invention; if he should for a long period of years retain the monopoly, and make and sell his invention publicly, and thus gather the whole profits of it, relying upon his superior skill and knowledge of the structure; and then, and then only, when the danger of competition should force him to procure the exclusive right, he should be allowed to take out a patent, and thus exclude the public from any further use than what should be derived under it during his fourteen years; it would materially retard the progress of science and the useful arts, and give a premium to those who should be least prompt to communicate their discoveries."

By the act of March 3, 1839, this abandonment to the public must have existed more than two years prior to the "application" for a patent. By the application filed in the patent office, the inventor makes a full disclosure of his invention, and gives public notice of his claim for a patent. It is conclusive evidence that the inventor does not intend to abandon it to the public. The delay afterward interposed, either by the mistakes of the public officers, or the delays of courts, where gross laches can not be imputed to the applicant, can not affect his right. The statute forfeits the right of an inventor to a patent only where the invention has been in public use more than two years before the application. A man might justly be treated as having abandoned his application if it be not prosecuted with reasonable diligence. But involuntary delays, not caused by the laches of the applicant, should not work a forfeiture of his rights. In this case, the complainant did not commence the manufacture of his improved lock till some time after his application was on file. The delay was not in consequence of his laches; and, within a reasonable time after the decision of the court as to the extent of his invention, a patent was granted for that portion of it to which he was clearly entitled. Here is no abandonment, either by the letter, or spirit of the statute, but a continual claim amid difficulties arising either from the obtuseness of officers, or accidental but unavoidable delays of public tribunals. If an inventor claims two distinct improvements in one machine, he may apply for them jointly, and have a single patent for both. If he has made a mistake as to one of the improvements claimed, but is clearly entitled to a patent as to the other, he can not be justly said to have abandoned either during a litigation as to his right to both.

2d. As to the question of infringement.

We have had ocular demonstration, by an examination of the defendant's admitted manufactures, that they palpably infringe the invention patented to complainant. When we have the things before our eyes (oculis ubjecta fidelibus) we want no opinions of mechanics or experts, and give no further reason for our opinion than that "we've seen and surely ought to know." If the patent to Patterson be good for anything (being only a change of the device invented by complainant, for the worse,) it is only for an improvement on his invention. It must have been granted on that supposition. The locks exhibited show a substantial identity with Adams' invention, with a palpable attempt to make a colorable variation. It is plain also that this patent of Patterson, for an immaterial variation, is

worthless as an improvement, and palpably got up as a cover, and to give color to this invasion of complainant's rights. To clearly vindicate this conclusion of the court, it would be necessary to have the things before us, and to give a viva voce explanation. For the present we can only say such is our undoubted conviction from careful personal examination of the things themselves.

3d. The defense of want of novelty is wholly unsuccessful. The spring bolt brought from Birmingham, clearly shows that the device invented by Adams to improve Janus-faced locks, had never entered into the conception of the maker of it. As the bolt was only partially beveled, he had somewhat inclined the lip of the catch to make it slide with more ease. Everything which we have said with regard to the New York gate-locks, got up to defeat the Sherwood patent, applies with double force to the rusty sample brought to our notice from Birmingham. In both cases, the defense amounts to no more than this—that the persons who made these supposed originals came so near the patented device or machine that they might have discovered it if they had only thought of it, or could have anticipated that, at some future day, it could be converted to some useful, practical purpose, for simplifying, cheapening and improving an important article of our manufacture. It is only when some person, by labor and perseverance, has been successful in perfecting some valuable manufacture, by ingenious improvements, and labor-saving devices, that their patents are sought to be annulled by digging up some useless, rusty, forgotten contrivances of unsuccessful experimenters. Let a decree be entered for complainant according to the prayer of the bill.

[NOTE. No other cases involving this patent appear to have been reported prior to 1880.]