MAST, FOOS & CO. v. DEMPSTER MILL MANUF'G CO.[1]

(Circuit Court of Appeals, Eighth Circuit.    August 2, 1897.)

No. 799.

1. PATENTS—ABANDONMENT OF INVENTION—USE AND SALE BEFORE APPLICATION.
    The use or sale of an invention by the inventor within two years before application is no just ground to presume its abandonment, unless accompanied by other acts or declarations clearly evincing an intention to dedicate the invention to the public.    Hence abandonment will not be presumed merely from a statement contained in the patent itself that "the invention is in practical operation, and on the market in considerable numbers, and the facts here stated with regard to its operation are such as have been ascertained from commercial experience."

2. SAME—PRIOR USE—EVIDENCE.
    The defense of prior use should be supported by evidence beyond a reasonable doubt, and the unsupported statement of a single witness that a machine embodying the invention was constructed and put in operation

[1] Rehearing denied October 18, 1897.

before the application is insufficient, when unaccompanied by any drawings or exhibits thereof.

3. SAME—INFRINGEMENT—COMBINATIONS.

One using the essential elements of a combination as enumerated in one claim cannot escape infringement because he does not use subordinate or unimportant elements of combinations described in other claims, and which were manifestly omitted from the claim in question that the inventor might more perfectly secure the essential elements of his invention.

4. SAME—NOVELTY AND INVENTION—WINDMILLS.

The substitution of an internal toothed spur-wheel for external toothed spur-gear in the machinery of windmills, by combining the same with the pinion, pitman, and pump, *held* to involve patentable invention, in view of the difficulties thereby overcome, and the fact that the improvement immediately went into general use, though internal tooth spur-wheels had long been used in many other machines.

5. SAME.

The Martin patent, No. 433,531, for improvements in windmills, shows patentable novelty and invention, and is valid. 71 Fed. 701, reversed.

Thayer, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Nebraska.

This is an appeal from a decree which dismissed a bill brought by Mast, Foos & Co., a corporation, for the infringement by the appellee, the Dempster Mill Manufacturing Company, a corporation, of letters patent No. 433,531, issued on August 5, 1890, to the appellant, as the assignee of Samuel W. Martin, for improvements in windmills. 71 Fed. 701. Here are copies of the drawings and specification of this patent:

"(No Model.)              S. W. Martin.
"Windmill.

"No. 433,531.                       Patented Aug. 5, 1890.

WITNESSES                                            INVENTOR
H. M. Plaistid                                      Samuel W. Martin,
Warren Hull,                                        By H. A. Toulmin
                                                       His Attorney.

"United States Patent Office.

"Samuel W. Martin, of Springfield, Ohio, Assignor to the Mast, Foos & Company, of Same Place.

. "Windmill.

"Specification Forming Part of Letters Patent No. 433,531, Dated August 5, 1890.

"Application Filed May 2, 1890. Serial No. 350,281. (No Model.)

"To All Whom it May Concern: Be it known that I, Samuel W. Martin, a citizen of the United States, residing at Springfield, in the county of Clark and state of Ohio, have invented certain new and useful improvements in windmills, of which the following is a specification, reference being had therein to the accompanying drawings: This invention relates to improvements in windmills. The invention consists, essentially, of an improved back-gear organization involving an external-toothed pinion and an internal-toothed spur-gear, the pinion being mounted on the wheel-shaft, and the gear having formed on or connected with it the wrist-pin, to which the operating-pitman is attached, whereby the speed of the main shaft as applied to the wrist-pin and pitman is reduced, and whereby, also, all pounding and lost motion is prevented as the pitman-connection passes over the center and changes from a pushing to a pulling action. This object is accomplished by the fact that a plurality of the pinion-teeth are always engaged with the internal spur-gear, resulting in giving a perfectly uniform and smooth and noiseless reciprocating motion to the actuating-rod, thereby prolonging the life of the machine by saving it from constant jarring and preventing wear and tear. In the accompanying drawing, forming a part of this specification, and on which like reference letters indicate corresponding parts, the figure represents a side elevation of my improved organization, with some of the parts in section, showing the same applied to any approved type of windmill structure. The letter A designates a cast frame or structure carried by the upper part of the turntable of a windmill, of which B refers to one of the bearing-blocks, and C to an arm, to which is pivoted the pitman, D. This pitman is triangular, and of the type on the market in windmills manufactured by my assignees of this invention. To one extremity of this pitman is attached a pitman-bar, E, the other end of which bar is fitted upon a wrist-pin, F, carried by the internal gear, G. This gear may be of any approved type, so long as it is provided with internal teeth. In the present case it is constructed with a disk, H, having a hub, I, and a rim, J. It is mounted upon a stud or shaft, K, carried by the bearing-block, B. On the main shaft, L, is placed an external-toothed pinion, M. It will be observed from the drawing that the pinion is within the circumference of the rim, J, and is intermeshed with the teeth of said rim. It will also be noticed that a plurality—three in the present instance—of the teeth of the pinion are engaged with the teeth of the gear-rim. This is due to the fact that the rim encircles the pinion. Thus it will be seen that when the main shaft is rotated with its pinion the internal gear-wheel, G, will also be rotated, though at a reduced speed, and, as several of the teeth of the pinion are always engaged with the teeth of the rim, no lost motion will occur as the wrist-pin passes the center, and the strains are changed from a pull to a push upon the pitman-bar, E. The actuating-rod, O, connects with the pitman, D, in any approved manner, at P, and extends down from the tower to the appliances to be operated; say a pump. The freedom of the organization from lost motion and sudden jerks as the wrist-pin passes over the center renders the operation of the pump smooth and regular. This increases the effectiveness of the pump, and prevents undue wear and tear. The invention is in practical operation, and on the market in considerable numbers, and the facts here stated with regard to its operation are such as have been ascertained from commercial experience with it.

"Having thus fully described my invention, what I claim as new, and desire to secure by letters patent, is: (1) The combination, with a windmill-driving shaft and a pinion thereon, of an internal-toothed spur-wheel mounted adjacent to the said shaft, and meshing with said pinion, a pitman connected with the spur-wheel, and an actuating-rod connected with the pitman. (2) The combination, with a windmill-driving shaft and a pinion mounted thereon, of

an internal-toothed spur-wheel, mounted adjacent to said shaft, and meshing with said pinion, a pitman-bar connected to the spur-wheel, a pivoted pitman connected to the said bar, and an actuating-rod connected to said pitman. (3) The combination, with the upper part of a windmill turntable, the main shaft mounted thereon, and a pitman pivoted thereto, an actuating-rod carried by the pitman, and a pinion mounted on said shaft, of a shaft or stud adjacent to the main shaft, an internal spur-gear mounted on said shaft or stud and having a wrist-pin, and a pitman-bar connected to the wrist-pin and to said pitman.

"In testimony whereof I affix my signature in presence of two witnesses.

"Samuel W. Martin.

"Witnesses:
"Warren Hull.
"H.. W. Plaisted."

The first claim of this patent is the only one that is now said to be infringed by the appellee. The infringing device may be described from Martin's drawings. Discard Martin's triangular pitman, D,. carry his pump-rod, O, to the left until it stands in the same vertical plane as the shaft. K. straighten the pitman-bar, E, swing its right end downward, and pivot it directly to the pump-rod, O, and we have the device used by the appellee. The defenses were that there was no novelty or utility in the combination of the appellant, and that the appellee did not infringe it. In support of these defenses the mill company introduced in evidence letters patent No. 182,394, dated September 19, 1876, to Edward Williams, for a new and improved windmill which shows the pitman for driving the pump-rod actuated by two eccentric external-toothed gear-wheels, so that the wind-wheel will have an increased leverage, and on the up-stroke of the pump-rod will draw it slowly, while it will return it more quickly upon the down-stroke. This was the only patent on a windmill offered as anticipating Martin's invention. A number of other letters patent were introduced, from which it appears that internal-toothed gearing had been, used, long before Martin made his invention, to drive pinions which actuated wood-saws, cutters of harvesting and mowing machines, and like parts of similar machinery. One witness testified that a windmill whose pump-rod was driven by an external-toothed pitman and an internal-toothed spur-gear was constructed and operated by the Spencer Manufacturing Company at Blue Springs, Neb., about November 1, 1889, but convincing evidence was produced by the appellant that Martin's first mill was constructed and sold as early as July, 1889.

H. A. Toulmin, for appellant.
H. W. Pennock and L. L. Morrison, for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The court below dismissed the bill in this case on the ground that the statement contained in the letters patent upon which this suit is based, that "the invention is in practical operation, and on the market in considerable numbers, and the facts here stated with regard to its operation are such as have been ascertained from commercial experience with it," proved that the appellant had abandoned the invention. The acts of congress provide that one who has invented and discovered a new and useful improvement, "not in public use or on sale for more than two years prior to his application unless the same is proved to have been abandoned, may, upon payment of the fees required by law, and other due proceedings had, obtain a patent therefor." 16 Stat. c. 230, p. 201, § 24 (Rev. St. § 4886). The issue of the patent is, therefore, prima facie evidence that the invention it

protects was not in public use or on sale for more than two years prior to the filing of the application on which it is based, and that it was not proved to be abandoned.   The utmost effect of the recital in the patent which we have quoted could not carry it further than to show that within two years prior to the application the improvements described in it had been used and sold.   But the use and sale of the invention within two years before the application for the patent was filed was not sufficient to establish an abandonment of the invention, because the act of congress expressly authorizes the issue of a patent notwithstanding such use and sale.   An abandonment may undoubtedly be proved within two years prior to the filing of the application, but it ought not to be presumed, and it should be established by convincing evidence of the intention of the owner of the invention to dedicate it to the public.   An abandonment is a dedication, and, like any other dedication, it should be clearly proved.   It rests upon the intention of the inventor.   If he expressly declares, or by his acts clearly shows, his intention to dedicate his invention to the public, a finding of abandonment would be warranted.   But such a dedication should not be lightly presumed, because it surrenders a vested right of property as much as the dedication of land for a public park or a public road.   The evidence in this case does not satisfy us that the appellant, or the inventor, Martin, its assignor, ever had any intention to dedicate this improvement to the public.   Under the acts of congress, they were authorized to use and sell the invention for two years, and to apply for and receive their patent, so that their failure to apply during that time was not inconsistent with an intention to preserve and protect their rights. There is no evidence in the record of a use or sale of the invention more than two years before the application was made.   There is no evidence of an express declaration that the inventor or the appellant would not, or did not intend to, apply for a patent for it, and there is no evidence of any acts inconsistent with such an intention.   On the other hand, the application for the patent within two years after the invention was made was presumptive evidence of an intention not to dedicate it to the public, and the issue of the patent was prima facie proof that it had not been abandoned.   Moreover, the defense of abandonment was not pleaded, and the appellant had no opportunity to meet it by evidence.   It was discovered by the court below at the final hearing, and it rested on the statement in the patent which we have quoted, and on that alone.   That statement was insufficient to support it.   Mere forbearance to apply for a patent until one has perfected his invention, and tested it by actual practice, affords no just ground to presume its abandonment; nor will the use or sale of it within two years before the application is filed afford such ground, unless such use or sale is accompanied by other acts or by declarations which clearly evidence an intention to dedicate the improvement to the public.   Agawam Co. v. Jordan, 7 Wall. 583, 607; Adams v. Jones, 1 Fed. Cas. 126, 127 (No. 57); Babcock v. Degener, 2 Fed. Cas. 293, 297 (No. 698); Jones v. Sewall, 13 Fed. Cas. 1017, 1027 (No. 7,495); M'Millin v. Barclay, 16 Fed. Cas.

302, 306 (No. 8,902); Pitts v. Edmonds, 19 Fed. Cas. 751, 757 (No. 11,191).

In considering the merits of the case, the defenses of prior use and no utility may be dismissed without extended consideration. All the witnesses on both sides of the case testify that the combination of the internal-toothed spur-wheel with the pinion and the other usual machinery of a windmill and pump is more useful and more valuable than any other combination of elements in a windmill and pump yet discovered. The evidence of prior use is the testimony of a single witness, who was once in the employ of another infringer of the device of the appellant, but has since been employed by the appellee. He produces no part of the old windmill which he testifies was set up and put in operation before Martin filed his application, and his evidence is without the support of any patents or exhibits, and without the support of the testimony of any other witness. The unsupported oral testimony which will warrant a finding of prior use should be clear and satisfactory. It is always open to suspicion. It ought to be sufficient to establish such a use beyond a reasonable doubt. The Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 450; Deering v. Harvester Works, 155 U. S. 286, 300, 15 Sup. Ct. 118. The testimony for the appellee on this issue is not of this character, and it will be dismissed without further comment.

But the appellee denies infringement. The essential element of the combination which the inventor sought to protect by the first claim of the patent in suit was the internal-toothed spur-wheel or spur-gear meshing with and driving the pinion which actuated the pitman and pump-rod. Prior to his invention, all windmills had been driven by external-toothed spur-wheels. As the cogs on the spur-wheel and pinion and the other parts of the machinery wore away, the spur-wheel and the pinion drew apart, and as the pitman-connection passed over the center, and the motion changed from a pulling to a pushing one, or vice versa, a pounding and racking of the machinery arose, which shortened its life, and sometimes stripped the cogs from the pinion. The object of Martin's invention was to do away with this pounding, and to prevent this wear and strain of the machinery. He accomplished this by throwing aside the external-toothed spur-gear, and combining an internal-toothed spur-wheel with the pinion and the other necessary elements of the windmill, so that, as he says, "a plurality of the pinion-teeth are always engaged with the internal spur-gear, resulting in giving a perfectly uniform and smooth and noiseless reciprocating motion to the actuating-rod, thereby prolonging the life of the machine by saving it from constant jarring, and preventing wear and tear." The evidence is undisputed that this invention completely accomplished its purpose. In the year 1893 or 1894 the appellee discarded the external-toothed spur-gear, with which it had previously driven its windmills, and substituted in its mills the internal-toothed spur-wheel described and claimed by Martin. The record discloses the fact that the president of the appellee had previously seen one of the mills of the appellant in operation, and that he was advised to make this change by his pat-

tern-maker, who had been in the employ of an infringer upon the appellant, against whom it had procured a decree, because the pattern-maker thought that the internal-toothed wheel was a good thing. The appellee seeks to escape from the inevitable conclusion to which these facts lead on the plea that it does not use the pitman-bar, the wrist-pin, or the pivoted pitman described in the specification and in the second and third claims of Martin's patent.   Its counsel invokes the principle that there can be no infringement of a combination if any element of the combination is absent from the infringing device, and insists that the absence of the pivoted pitman and of the pitman-bar is fatal to the appellant's claim of infringement.   The answer is that this invention consists essentially, as the inventor declares at the beginning of his specification, in the combination of the internal-toothed spur-gear with any suitable pinion, wind-shaft, wrist-pin, pitman, and pump-rod of a windmill, and that he has broadly claimed this combination in the first claim of his patent.   That claim is:

"(1) The combination, with a windmill-driving shaft and a pinion thereon, of an internal-toothed spur-wheel mounted adjacent to the said shaft, and meshing with said pinion, a pitman connected with the spur-wheel, and an actuating-rod connected with the pitman."

There is not an element in this combination which is not found in the windmill of the appellee, and it cannot be permitted to read other elements into this claim, and then to defeat it, because it does not use the elements it interpolates.   The pitman-bar and the pivoted pitman were omitted from this claim, we think, for the express purpose of securing the essential element of the invention in combination with any pinion, pitman, and pump-rod that might be used. In our opinion, the special office of the second and third claims was to secure combinations containing the pivoted pitman and the pitman-rod described in the specification and omitted from the first claim, and the fact that these claims were added is a very persuasive argument that the additional elements they protect were not secured by the first claim.   Any construction which would read into the first claim these additional elements renders it useless and unmeaning, because it gives it the same effect as the claims which follow it, and in this way shows that neither the patentee nor the patent office contemplated such an interpretation.   The appellee has appropriated the essential feature of this invention,—the internal-toothed spur-gear in combination with the pinion, pitman, wind-shaft, and pump-rod of a windmill.   The terms of the first claim of the patent are plain and unambiguous.   They need no construction, and, when taken in their ordinary signification, they fully describe and clearly claim the combination which the appellee is using.   It ought not to escape here, because it does not use subordinate or unimportant elements of combinations described in other claims, which were undoubtedly omitted from this claim that the inventor might more perfectly secure the essential element of his invention.   Manufacturing Co. v. Wharton, 28 Fed. 189, 190; Toudeur v. Stewart, Id. 561, 564; Coupler Co. v. Pratt, 70 Fed. 622, 629.

Finally, the counsel for the appellee argue that there is no patentable novelty in the combination described in this claim, because in-

ternal-toothed spur-wheels were old and well known, and the substitution of them for external-toothed spur-gear in the machinery of windmills was nothing but a double use. This argument is always plausible and persuasive where old elements have been combined to produce a new or better result. Each element, taken by itself, has its old effect, and it is always difficult to understand how it was that the practiced eyes of skilled mechanics did not at once see and apply the necessary remedy to the troublesome evil which the invention removes. The fact, however, that such an evil long existed, and that no mechanic perceived or applied the remedy, is the most conclusive evidence that something more than his eyes and skill was required to discover and apply the requisite device. It is true that internal-toothed spur-wheels, their effect and their relative advantages over external-toothed wheels had been familiar to mechanics time out of mind. They had been used on mowing machines and harvesting machines, on machines for sawing wood, and doubtless upon hundreds of other machines, but no one had ever combined one of these internal-toothed wheels with the pinion, pitman, and pump of a windmill until Martin made his invention in the year 1889. Windmills were old, and their operation was familiar to mechanics, but until that year they went on pounding their wheels with every stroke of the pump-rod, wearing themselves out prematurely, and occasionally stripping their pinions of cogs for the lack of the combination of this internal-toothed spur-wheel with the other essential elements of their machinery. If naught but the skill of the mechanic was required to make this improvement, it is passing strange that no mechanic ever made it until after Martin discovered and described it. In Electric Co. v. La Rue, 139 U. S. 601, 11 Sup. Ct. 670, the supreme court sustained a patent to one who took a torsional spring, such as had been used in clocks, doors, and other articles of domestic furniture, and applied it to telegraph instruments. In Crane v. Price, Webst. Pat. Cas. 409, the use of anthracite coal where bituminous coal had previously been used for smelting iron was held to be an invention, because it produced better iron at less expense. It is not infrequently a difficult and delicate task to determine whether or not the application of an old device to the production of a new or better result rises to the dignity of an invention. Mr. Justice Brown says in C. & A. Potts & Co. v. Creager, 155 U. S. 597, 608, 15 Sup. Ct. 194, 198, that the result of the authorities upon this subject is that, "if the new use be so nearly analogous to the former one that the applicability of the device to its new use would occur to a person of ordinary mechanical skill, it is only a case of double use; but if the relations between them be remote, and especially if the use of the old device produce a new result, it may at least involve an exercise of the inventive faculty." The best evidence that the application of the internal-toothed spur-wheel to the new use of propelling the machinery of a windmill would not occur to a person of ordinary mechanical skill is that it did not occur to any of them in all the years in which windmills had been in use before Martin discovered and applied it. Thomson v. Bank, 10 U. S. App. 500, 512, 513, 3 C. C. A. 518, 522, 523, 53 Fed. 250, 255; Loom Co. v. Higgins, 105 U. S. 580, 591; Consolidated Safety-Valve

Co. v. Crosby Steam-Gauge & Valve Co., 113 U. S. 157, 179, 5 Sup. Ct. 513; Magowan v. Packing Co., 141 U. S. 332, 341, 342, 12 Sup. Ct. 71; The Barbed-Wire Patent, 143 U. S. 275, 281, 283, 12 Sup. Ct. 443, 450. Moreover, the combination of Martin immediately went into general use. More than 3,000 windmills which contain his combination have been manufactured and sold since 1890. All the witnesses testify to its advantages over the old combination which contained the external-toothed gear, and the fact that the appellee discarded the latter, and substituted the former, demonstrates its utility and its advantages. Where the question of novelty is in doubt, the fact that the device has gone into general use, and has displaced other devices previously employed for a similar purpose, is sufficient to turn the scale in favor of the invention. C. & A. Potts & Co. v. Creager, 155 U. S. 597, 609, 15 Sup. Ct. 194; Smith v. Vulcanite Co., 93 U. S. 486; Magowan v. Packing Co., 141 U. S. 332, 343, 12 Sup. Ct. 71.

The probative force of the patent, and of the facts to which we have adverted, constrain us to hold that the combination described in its first claim rose to the dignity of an invention, and was properly secured by the patent. The decree below must be reversed, with costs, and the case must be remanded to the court below, with directions to enter a decree to the effect that the first claim of the patent is valid, and is infringed by the appellee; that the latter be enjoined from making, using, or selling any machine containing the combination described in that claim; and that it account for the profits which it has derived from the manufacture and sale of any such machines; and it is so ordered.

THAYER, Circuit Judge (dissenting). I am not able to concur in that part of the foregoing opinion which deals with the question of patentable novelty. In my judgment, the combination covered by the first claim of Martin's patent, No. 433,531, is destitute of patentable novelty, unless the word "pitman," as used in that claim, is understood to include the triangular pitman mentioned in the specification, as well as the pitman, E, which is termed in the specification the "pitman-bar." If the claim is construed as covering both of these parts, which together operate as a pitman, it might be upheld; but in that event the defendant would not be guilty of infringement, because he does not use the triangular pitman, or any equivalent device. The majority of the court have construed the word "pitman" as meaning simply the "pitman-bar," which is immediately attached to the spur-wheel, and, as thus construed, it admits of no doubt that the exact combination covered by the first claim is disclosed by a multitude of machines, such as mowers, reapers, churns, machines for sawing wood, and others of a similar character. A pinion mounted on a shaft, the teeth of which engage with the teeth of a spur or drive wheel, for the purpose of communicating a reciprocating motion to a pitman, or, vice versa, of communicating motion to a revolving shaft, is one of the oldest mechanical devices, which has been in use time out of mind; and, judging by the state of the art when the Martin patent was granted, it was sometimes a matter of choice

whether the teeth of both wheels were set on the exterior surface of the rims of the wheels, forming an exterior gearing, or whether the teeth of one wheel were set on the exterior surface, and the teeth of the other wheel on the interior surface of the rim, so as to form what is termed an "interior gearing." Very frequently it was necessary to adopt the latter mode of construction to render the machine more compact, or to accomplish some other special object. In view of the state of the art, as illustrated by the various kinds of machines above mentioned, it is manifest that the advantages to be gained by either method of engagement were well understood, and that, if called upon to construct a machine for a given purpose, an experienced mechanic would have had no difficulty in deciding which form of gearing was preferable. In my judgment, the majority of the court attach undue importance to the fact that Martin was the first to employ the interior gearing in constructing a windmill. I also think that they exaggerate the defects in that class of windmills which are constructed with an exterior gearing. It may be that a windmill constructed according to Martin's patent makes a little less noise than a windmill which employs the exterior gearing, and possibly the wear on the cogs is somewhat less, but the old-fashioned windmill had proved to be very serviceable, and the defects therein were not so serious as to require an exercise of the inventive faculty to overcome them. Martin simply applied to a windmill a method of gearing which was well known, and had been employed for many years in constructing other machines, and by so doing he displayed no more than ordinary mechanical skill. The new use to which he applied the interior gearing was clearly analogous to the use to which it had been applied in other machines, notably in churns, mowing machines, and reapers. Nor were the results which he attained by the application of the old device to windmills so highly beneficial as to justify the inference that the faculty of invention was involved in conceiving the new use. In my judgment, the patent laws ought not to be so construed as to give to the complainant a monopoly of an old and well-known mechanical combination in the construction of windmills. The decree below being for the right party, I think it should be affirmed.