McCONWAY & TORLEY CO. v. SHICKLE, HARRISON & HOWARD IRON CO.

(Circuit Court, E. D. Missouri, E. D.   February 14, 1899.)

No. 3,883.

PATENTS—INVENTION—IMPROVEMENT IN CAR COUPLERS.
The Janney patent. No. 254,093, for an improvement in car couplers especially designed for use on freight cars, and applicable to the hook or Janney type of couplers, covers a meritorious and patentable device, which was not anticipated or obviously suggested by anything in the prior art.

This is a suit in equity by the McConway & Torley Company against the Shickle, Harrison & Howard Iron Company for alleged infringement of a patent.

J. Snowden Bell, Geo. H. Christy, and Henry M. Post, for complainant.

T. A. Post and Geo. H. Knight, for defendant.

ADAMS, District Judge. This is a suit to enjoin the alleged infringement of letters patent of the United States No. 254,093, granted

February 21, 1882, to E. H. Janney, assignor to the Janney Car-Coupler Company, for new and useful improvements in car couplers. The complainant's title to the patent is not disputed. The defenses are unpatentability, anticipation, and noninfringement. Before entering upon a consideration of these defenses, it is well to ascertain and state what the invention of the patent is. The patentee describes it as "an invention specially designed for use upon freight cars," and states that it "consists mainly in the combination of a specially constructed lever arm of a rotary hook nose with a specially constructed locking pin." He refers to the drawings accompanying the patent, and states that certain of them represent the coupler, "which may be of the Janney or other proper type." The claim of the patent, following these descriptions, reads as follows: "In combination with the lever arm having an inclined face, the vertically moving locking pin, provided with an inclined face." The drawings referred to show a bifurcated drawhead, the more prominent horn of which is so constructed and fitted that the hook nose, with its lever arm, may be pivoted upon it. The prior art shows that this pivoted hook nose, with its lever arm, made integral therewith, is the characteristic feature of a type of couplers invented by Janney in 1873, and which since then has been known and classified as the "hook couplers, coupling in a vertical plane," or as the "couplers of the Janney type." The several patents of Janney (No. 138,405, dated April 29, 1873; its reissue, No. 8,153, of date April 2, 1878; No. 156,024, of date October 20, 1874; and No. 212,703, of date February 25, 1879) relate to this class of hook couplers, coupling in a vertical plane, and evince a purpose to create, improve, and perfect this particular class of couplers only. In the execution of this purpose, Janney succeeded so well as to call forth the encomiums of the court in the case of Coupler Co. v. Pratt, 70 Fed. 622, where Judge Coxe says:

"Janney was an inventor of more than ordinary genius. He struck out on entirely new lines, and produced a coupler so far superior to all that had gone before that it at once began its phenomenal progress towards popular favor. The Master Car Builders' Association adopted it as the standard, and now it is almost universally recognized as the most complete coupler used on American railroads."

The statement in the specifications that Figs. 1, 2, 3, and 11 represent the drawhead of the coupler, "which may be of the Janney or other proper type," does not, in my opinion, contemplate the use of other couplers, of distinct or different type from the Janney type. The word "proper," here used, must be construed in the light of other descriptive statements, as well as the drawings of the patent, and, so construed, clearly relates to other couplers of the general type or class known as the "hook or Janney coupler." In other words, it was to this distinctive type or class of coupler, and to none other, that the patentee was devoting his inventive skill. "The lever arm" referred to in the claim must be construed in the light of the specifications, and, so construed, means that particular lever arm found in the Janney type. The invention of the patent, therefore, is for a locking device applicable to this Janney type of coupler. By reason of the

narrow space between freight cars when coupled into a train, it was found that the horizontal, spring-actuated pin, which the prior patents employed for coupling passenger cars, was not suitable for service on freight cars. The coupling of freight cars was therefore the special problem to which the inventor gave his attention, and it resulted in the invention of the patent in suit. · An inspection of the device of the patent, and observation of its action, cannot fail to impress one with its value. It is exceedingly simple in construction, works automatically and with great certainty, and accomplishes excellent results. It can be applied to any coupler of the Janney or kindred type, having a bifurcated drawhead and the hook nose, with its integral lever arm pivoted upon one of the horns of the drawhead. This lever arm and vertically moving locking pin co-operate, through the instrumentality of inclined faces at the points of contact, so as to raise the pin and permit the tail of the lever arm to pass under the shoulder of the pin upon which the inclined surface is made. Their direct operation is as follows: The hook nose of the drawhead of one car, when in the process of coupling with another car, is driven against the lever arm of the hook nose of the other car. The sudden impact forces the inclined face on the tail of the lever arm against the inclined face of the vertical locking pin, and, by means of their continuing wedge-like action, the locking pin is forced up until the tail of the lever passes under its shoulder, when the pin drops by force of gravity, and effectually locks the hook noses of the couplers. The proof shows that this invention has received much public favor. Over 600,000 couplers embodying the device of the patent are now in actual service, and they have largely superseded all other devices invented for the same purpose. Considering the character of the invention itself, and all other facts found in the proofs relating to its value and appreciation, I find no difficulty in determining the issue of patentability in favor of the complainant.

In considering the defense of anticipation, it is first to be observed that the several patents pleaded (with the exception of the prior Janney and Hein patents, to which I will presently refer) relate generally to the old loose link and pin type of coupler, and to other spring catches, as commonly found on cupboard doors or garden gates. These patents, without doubt, show that co-acting inclined faces had been employed in the locking process of the link and pin type of coupler before the application for the patent in suit was made, but I find no evidence of such use in connection with an automatic vertically locking pin, operating by gravity, and especially suitable to the necessities attending the coupling of freight cars. As already seen, the hook coupler, coupling in a vertical plane, otherwise known as the "Janney type of coupler," was a wide departure from anything shown in the prior art,—so wide as to confer upon the inventor the distinction of a pioneer; and this particular type of coupler has so commended itself to the approbation of railroad operators that it has largely superseded all others in practical use. Under such circumstances, the prior art should be carefully scrutinized, before a court should pronounce its discarded and ineffectual mechanism as the me-

chanical equivalents of a device which has brought success out of failure, and given to the world a valuable contribution to its stock of really useful and beneficial knowledge.

I have carefully considered the several patents pleaded as anticipations in this case, and, for want of time necessary to take up and explain all of them, have selected for analysis the Porter patent, No. 115,517, of date May 30, 1871; believing it to be an expression of the prior art relating to the link and pin type of couplers most favorable to the contention of the defendants.   This patent shows a lever arm acting upon a vertically moving catch pin, and shows that the end of the lever and the co-acting surface of the pin have inclined faces; but the lever is pivoted horizontally, not vertically upon a horn of the drawhead, but laterally through its body.   It does not operate with a wedge-like action to force up the pin, but with a clasping action, quite like the spring lock of an ordinary cupboard door. Its result is to make fast one end of a common loose pin (employed in the old type of couplers), instead of locking the abutting noses of two drawheads, as required in the Janney type.   It appears to me that the action of this device is so different from the invention of the patent in suit, and the result so unsuited to the necessities of the service contemplated by the patent in suit, as to present no suggestion to the ordinary skilled mechanic of the device of the patent;  and in my opinion the same may truthfully be said of all the other alleged anticipatory devices.

But counsel say that the former Janney patents, of 1873, 1874, and 1879, and the Hein patent, No. 244,895, of date July 26, 1881, disclose the invention of the patent in suit.   These patents are different from the others relied upon by defendants.   They relate to the Janney or hook couplers, and they provide a device for locking the pivoted noses of two abutting couplers.   They well exhibit the repeated efforts which were made to secure an effective locker for this new type of coupler, but in my opinion they fail to anticipate the invention of the patent in suit.   None of these Janney patents show a vertically moving locking pin, and, of course, do not show any inclined face of the lever arm adapted to engage an inclined face on such vertically moving locking pin, and none of them show a locking pin operating automatically by gravity.   They each present a locking block, operate by a spring, and move horizontally rather than vertically; and the evidence shows that, while they produce fair results on passenger cars, they are, for the reasons already adverted to, ill adapted for use on freight cars.   And, as for the Hein patent, it seems to me that its locking mechanism, composed of a block arrangement, or a block and dog in connection with a pivoted hook, presents no similarity, either in appearance or results, to the device of the patent in suit.

But it is contended that the prior art, as disclosed in all of the alleged anticipatory patents, was in 1882 so suggestive as to make the device of the patent in suit obvious to an intelligent and skilled mechanic; and, with a view of demonstrating such obviousness, the defendant's proof shows that in the year 1886, when the evidence in this case was taken, it submitted the Janney construction under the 1879 patent to three skilled mechanics, and, without further instruc-

tion, asked them to substitute a vertical lock in lieu of the side or laterally working lock of the patent of 1879; and it appears from the proof that these mechanics, acting separately, each for himself, were able to do so, and their results are produced as exhibits in the case. These results fairly show the device of the patent in suit, but I am unable to regard the action of these mechanics as a fair test of obviousness, for two reasons: First. They did their work in the year 1896, instead of 1882, the date of the patent. During these 14 years mechanical knowledge and skill had made great advances, and it does not follow that if a mechanic in 1896, with all the light of advanced knowledge in the art, could apply the mechanical knowledge as it existed in 1882 to a new result, such mechanic could have done so if he had made the effort in the year 1882. Second. It seems to me that the test was unfair for the reason that the question submitted to the mechanics practically stated the object to be accomplished. In other words, they were directed to reconstruct the device of the old patent of 1879 so as to convert its horizontally working locking block into an effectively working vertical pin. A part of the invention in this case was to apprehend that there could be an effectively working vertical pin. This part of the invention was imparted to these experts. Their conclusions, for both these reasons, are not persuasive. In addition to these things, the proof shows that inventive skill was specially active from and after 1873, when the hook or Janney type of coupler was invented, to so perfect it as to make it available to all the needs of actual service. Different locking devices had been suggested, but no inventor, and certainly no ordinary skilled mechanic, had discovered the applicability of the principles of any of the old devices to the new result accomplished by the patent in suit. The proof further shows that after Janney made known the invention of the patent in suit, although it was a very simple thing, it took over $60,000 in money, and three years in time, to so exploit the invention as to attract serious attention on the part of the railroad world. In the light of these facts, it seems to me gross presumption to say that the invention of the patent was so obvious, in the light of the Porter and other similar inventions, or even in the light of the prior Janney or Hein patents, that any skilled mechanic could readily have discovered and applied it to the type of hook coupler coupling in a vertical plane. The language of Mr. Justice Bradley in the case of Loom Co. v. Higgins, 105 U. S. 580, seems to be pertinent to this case. He says as follows:

"But it is plain from the evidence, and from the very fact that it was not sooner adopted and used, that it did not for years occur in this light even to the most skillful persons. It may have been under their very eyes; they may almost be said to have stumbled over it; but they certainly failed to see it, to estimate its value, and to bring it into notice. * * * Now that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of the greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention."

On the same subject, Mr. Justice Blatchford, then circuit judge, said in the case of Wooster v. Blake, 8 Fed. 429, as follows:

"Much is said in the evidence on the part of the defendants as to the obvious character of this or that arrangement, and that any mechanic would know enough to do this or that. This is the oft-repeated story in belittling inventions. The invention consists primarily in finding out what mechanical operation is necessary to produce the practical result arrived at. When such operation is hit upon, the mechanical work is easy. It is easy, when the mechanical operation is seen, to say that it was obvious that certain mechanical arrangements would affect it; but mechanical arrangements are tried, and tried in vain, to reach a practical result, because the mechanical arrangement which is to effect such result is not yet seen. In looking at the completed thing, the mechanical operation is there; but the inventor, though he knew all about cams and levers, and other mechanical arrangements, did not have in advance before him the coveted mechanical operation."

To the same effect are the cases of Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, and Mast, Foos & Co. v. Dempster Mill Mfg. Co., 49 U. S. App. 508, 27 C. C. A. 191, and 82 Fed. 327.

The facts of this case, in the light of the authorities cited, lead to the conclusion that the invention of the patent was not anticipated. The only other issue left for consideration is that of infringement. In the light of the proofs, this issue is hardly debatable. Infringement is clear. A decree will be entered for the complainant, and a reference will be made to a master for an accounting.