### BLUM et al. v. KERNGOOD.

(Circuit Court, D. Maryland.   Feb. 5, 1898.)

PATENTS—INFRINGEMENT—WAISTBAND FASTENERS.

The Ewig patent, No. 408,300, for a waistband fastener for trousers, *held* to contain only one novel feature, namely, a slot having a straight edge across the plate, over which the two edges of the cloth can be stitched; and *held*, further, that this was not a pioneer invention, and was not infringed by defendant's device.

This was a suit in equity by Isaac Blum and William S. Wheatfield against Herman Kerngood, trading as the Alma Button Company, for alleged infringement of patent No. 408,300, issued to John Ewig, August 6, 1889, for waistband fasteners.

Isidor Rayner and Price & Stewart, for complainants.
Thos. G. Hayes and Louis B. Berner, for defendant.

MORRIS, District Judge.   A defense relied upon is noninfringement.   The specification of patent No. 408,300 describes a hook and eye

device, in which the hook is made of a broad, flat, thin piece of metal, turned back upon itself. It is designed to be placed between the two thicknesses of material of which the waistband of a pair of trousers is made. The specifications also describe a peculiar catch, but that is not infringed. It is only with the hook that we are concerned in this case. The novelty of the hook, and the invention which Ewig supposed he had discovered, can be quite clearly understood from the specification, when read in connection with the state of the art, and a previous patent (No. 375,699) to the same inventor, mentioned in the specification. A broad hook, made of thin sheet metal, inserted between the outer and inner thicknesses of the waistband, with a broad catch opposite to it, has the advantage of keeping the waistband flat, and of distributing the pull over considerable surface, and of counteracting the tendency of the pull to wrinkle the waistband. But the broad body plate of the hook inserted between the two thicknesses of cloth at their edges had this disadvantage: that the edges of cloth were free, and gave no support' to the hook, and had a tendency to gape open, which was unsightly. The improvement of the patent was that a portion of the hook plate was cut away, so that through the slot thus left the edges of the cloth could be sewed together. But the mere cutting away of a portion of the metal, leaving a slot of any shape, was not new, as is shown by the French hooks in common use, illustrated by the exhibits. The novelty consisted in cutting a slot of the shape and for the purpose indicated by the patent. This was a slot having a straight edge across the plate, over which the two edges of cloth could be stitched, and which effected two beneficial results. One was that the edges, being stitched together just as if the hook was not there, did not gape open, and presented a neat appearance. The other was that the straight transverse edge of the slot presented to the straight stitching of the edges of the cloth a wide bearing, at right angles to the line of the pull, which tended to keep the hook firmly in its place, and to resist puckering in the waistband, and keep it flat and neat in appearance. The specification describes the slot as semicircular, because it was round in the hook, and straight like the diameter of a circle at the base of the hook. If the hook was turned back on itself just at the straight edge of its base, it is obvious that the body of the hook could not be inserted between the two layers of cloth far enough to permit the two edges of cloth to be brought together to be stitched; and for that reason the portion bent back to form the hook is bent over at a little distance from the straight edge, so as to leave what are, in the specification, called the "shoulders, e, e."

## FIG. 2.     FIG.3.

92 F.—63

Claim 1, as first submitted to the patent office, and rejected, was as follows:

"(1) In a garment fastening, the combination with a catch. C, of the hook, B, having slot, b, substantially as and for the purpose specified."

This claim was rejected, apparently for the reason that a slotted hook was old. The specification was then amended so as to more distinctly point out the improvement, by inserting this:

"Referring to the drawings, the letter A indicates one member of my fastening, consisting of a piece of sheet metal rounded at one end, and having a semicircular slot in said end. Said slotted and rounded end is bent over and back upon the body of the member, A, to form a hook, B, and is bent so as to leave shoulders, e, projecting beyond the edge of the body, A, for the purpose hereinafter described."

In the original specification it was said:

"I have found, in practice, that when the hook, B, is at all wide, the edges of the cloth are not sufficiently supported by threads; and, to remedy this defect, I cut away the center of the hook to form a slot, b, as shown in Figs. 1, 2, 3 of the drawing, which permits the cloth to be stitched through said slot, thus not only permitting the cloth to be stitched substantially along its entire edge, but also assisting in firmly securing the member, A, in place."

The original specification was amended by inserting in the clause above quoted the following:

"And the hook portion, B, is so bent over upon the body portion, A, as to leave the shoulders, e, e, projecting beyond said body, A, which allows the two layers of cloth on each side of the member, A, to meet slightly beyond the edge of the member, A, and permits," etc.

Claim 1, as amended and allowed, is as follows:

"(1) In a garment fastening, the combination with catch, C, of the plate, A, having the rounded hook, B, provided with a semicircular slot and the shoulders, e, e; said plate, A, being perforated at a, a, substantially as shown and described, and for the purposes specified."

It appears by the amended specification, as well as by the amended claim, that the patentee pointed out and claimed the semicircular slot, with the shoulders, e, e, as his invention or improvement. His original claim 1, which was, broadly, for the hook having a slot, was rejected, and the restricted claim for the semicircular slot with the shoulders was allowed. The patent examiners were clearly right in this restriction. A slot was old, but a semicircular slot made of that shape for the purpose of presenting a straight transverse edge to the stitching was new; and the bending of the hook so as to form the shoulders beyond the straight edge for the purpose of allowing space for the edges of the two layers of cloth to meet was new, as a device for that particular purpose, in connection with a solid body plate. There was nothing new in the projecting ears on each side, with perforations for threads. These ears appeared in the patent to Ewig, December 27, 1887 (No. 375,699), and are there called a "lip or projection provided with one or more perforations." In the patent in suit it is merely said in the specifications that the body of the hook is provided with perforations for the passage of the threads for securing it to the garment; and in claim 1, that plate, A, is perforated at a, a, as shown and described. The ears, therefore, which may be used for the perforations, are not covered by any-

thing in the specification and claim, and, in my opinion, in view of the state of the art, and Ewig's previous patent, could not rightly have been claimed. The defendant's hook, which is charged to be an infringement, is like the complainant's hook, except that it does not have the semicircular slot. It has an elliptical slot, which extends as far into the body of the metal as it does into the part which forms the hook; and while it permits the edges of the two layers of cloth to be stitched across, just as the old French hook did, it does not present to the stitching any bearing to resist the pull. It is urged that such an edge is presented by the ears on each side of the hook, and that they are the equivalent of the straight edge cut out in the center of the hook. It may be that on defendant's device the edge of the ears help to remedy the absence of the center straight edge, but it must be remembered that complainant's device, although it has proved highly successful, and has gone wonderfully into use by the trade, is not a pioneer invention. Haarvig's patent, No. 144,334, November 4, 1873, shows a waistband fastening for pantaloons, made of flat metal, attached by perforations in ears at each side; and the Weinberg patent, No. 60,600, December 18, 1866, exhibits a form of hook and eye fastener for the waistband of pantaloons; and Ewig's patent, No. 375,699, December 27, 1887, was a device for the same purpose. There was nothing, therefore, new in the substitution of a hook and eye device of any known form for buttons for this purpose. Patentable novelty was restricted to a new form of device, or an improvement on an old form, requiring invention. All forms had for their object to resist strain; to keep the device securely in place; to be sightly in appearance and moderate in cost. In the device now in suit, nothing distinguishes it from Ewig's prior patent but the semicircular slot made in the form, which remedies the difficulty which Ewig says he encountered when using a wide hook, viz. that the edges of the cloth were not sufficiently supported by the threads, and with the advantage, when used, that it resulted in the body plate of the hook being more securely held in place. This semicircular slot is all that I find that was patentable in complainant's device, and, treating the patent in suit as a good patent for that, I do not find that the defendant infringes; and the bill must be dismissed.