PARLIN & ORENDORFF CO. et al. v. MOLINE PLOW CO.

(Circuit Court of Appeals, Seventh Circuit.   July 26, 1898.)

No. 500.

1. PATENTS—ANTICIPATION—EVIDENCE OF PRIOR USE.
    The uncontradicted testimony of six unimpeached and apparently credible witnesses, showing the prior public.use of an anticipating machine, corroborated by documentary evidence identifying the time, and by the actual presence of such machine in court, is not to be overcome by the mere fact that the maker thereof never applied for a patent on it, when it appears that he was already manufacturing and selling other satisfactory machines to do the same work, and did not wish to incur the expense of changing and improving the pattern.

2. SAME—CORN PLANTERS.
    The Odell patent, No. 326,449, for an improvement in corn planters, is void because of the public use of an anticipating machine more than two years before the application for the patent.   84 Fed. 349, reversed.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This was a suit in equity by the Moline Plow Company against the Parlin & Orendorff Company and others for alleged infringement of a patent for an improvement in corn planters.   The circuit court rendered a decree for the complainant (84 Fed. 349), from which the defendants have appealed.

C. E. Pickard and L. L. Bond, for appellants.

C. K. Offield, for appellee.

Before WOODS and SHOWALTER, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge.   This suit was brought for the infringement of the first and second claims of letters patent No. 326,449, dated September 15, 1885, granted to Levi J. Odell for an improvement in corn planters.   These claims are:

"(1) The combination, with the corn planter having seed tubes, of the valves in the tubes, the rock shaft connected to the valves and having the bent arms, the bracket arms secured to the planter and having the heads, the fulcrumed levers and guiding sheaves secured to the heads, the springs bearing on the levers, and said levers being connected to the arms of the rock shaft, and the knotted cord or wire passing through the sheaves for operating the levers and opening the valves, substantially as described.

"(2) The combination, with a corn planter having seed tubes and pivoted valves, r, in said tubes, of the rock shaft, m, having arms, n and o, rods, p, connecting arms, o, with the valves, bracket arms, a, secured to the planter, and having the heads, b, guiding sheaves on said heads, levers, h, fulcrumed to the heads and having bifurcated fingers, i, the lower arms of the levers being connected to the arms, n, springs, k, connected to the levers, and a knotted cord or wire passing through the sheaves for operating one of the levers, substantially as described."

In the court below the patent was sustained, and the defendants held to infringe.   From this judgment an appeal is taken to this court.   There are 14 assignments of error, only 5 of which, Nos. 5, 6, 7, 8, and 9, it will be necessary to notice; these all raising substan-

tially the one question of the anticipation of the complainant's device by the making and public use of a similar machine in the winter of 1881 and 1882 by the persons then representing the defendants in this suit. There was a machine in the defendants' possession brought into the circuit court below as an exhibit in the case, and also on this appeal, which it is not seriously disputed, if made and publicly used previous to the making of the application for the complainant's patent, anticipates the complainant's device. The positive testimony of several witnesses produced on the trial is corroborated by the actual presence of the machine in court, and yet the testimony was apparently rejected on the ground that if Brown, who was manufacturing corn planters, and who was in the business of obtaining patents on similar machinery, had constructed this machine, he would have applied for a patent and continued to manufacture the machines. Such a reason might be sufficient if the testimony were doubtful or conflicting, but, in the absence of all opposing testimony, it constitutes hardly a sufficient reason for disregarding or disbelieving the testimony of five or six apparently credible witnesses, especially as a reasonable excuse was given for Brown's not either applying for a patent or continuing the construction of the machine. He was manufacturing and selling corn planters, and he already had one on the market which was a success, and he did not wish to change for the manufacture of a new machine. The evidence seems clear, and apparently there can be no mistake about the date, that this identical machine now brought into court was made in the winter of 1881–82, and was successfully used in the spring of 1882 in planting corn on George W. Brown's old farm. The witnesses all agree that the planting was done on this farm in 1882, and before George W. Brown purchased the Gilbert farm, in January, 1883, and that planting was also done by the new machine on the Gilbert farm the same year Brown bought it. To make certain the time, a certified copy of the deed of the Gilbert farm showing the purchase to have been on January 25, 1883, was introduced in evidence. On these two farms 100 acres were planted by this machine in the years 1882 and 1883. The identity of the machine and the date of manufacture are also testified to by several witnesses.

Speaking of the machine brought into court, witness John C. Tunnicliff, who was in the continuous employ of George W. Brown from September 1, 1873, and of the corporation which succeeded Brown up to 1892, testified:

"Q. During this time was there any machine made by Mr. George W. Brown, or by the company, in which there was one set of driving gear for the upper or hopper valves and other means for operating the seed-tube valve? If so, state what such machine was, generally. A. During the winter of 1881 and 1882 we constructed a machine with the check-rower operating the lower drop alone, and a chain drive from the rear wheel to a rotating shaft which operated bevel gears and a thin plate, termed a 'continuous drop.' This was independent of the check-rower attachment, and could be used as a check-row planter or a drill planter, and was termed a 'combined planter.' Q. Do you know what became of that machine, and where it is now? If so, state. A. After we completed the machine, we planted corn with it in the spring of 1882, and then it was brought back to the factory, and the construction of the lower drop was changed, and we again planted with it in the

spring of 1883. Then we brought it back to the factory, and it was set aside for the time being, and this same machine is now in this office. Q. You say the machine is now in this office. Please look at the front section of a corn planter standing in this room, which, as it now stands, is detached from the rear section, which is also here, and say whether or not it is the machine you referred to in your previous answer. A. Yes, sir; it is. Q. How or by what means do you fix the date at which this machine was constructed and operated? A. On January 25, 1883, a deed was made of a farm from Isaac V. Gilbert and wife to George W. Brown. The first time we tried this planter was on Mr. Brown's farm, the year before he bought the Gilbert farm. The next time was the spring after he bought the Gilbert farm, and on the Gilbert farm. After planting season was over, this planter was put into the granary on the Gilbert farm, and I went there and got it myself and brought it back to the shop. Q. How many, or about how many, acres were planted with this machine? A. I know positively of twenty acres being planted. I don't know of any other planter that was used on his farm that season, yet, to my knowledge, I only know of the twenty acres. I was in the field where the planter was started, and I also went out the next day just as the piece was being completed, simply to see how it was working."

In another place he explains why the machine came to be constructed as follows:

"At the time this machine was made the check-row attachment was becoming very popular, and the demand for them increasing rapidly, and in the winter of 1881 and 1882, or rather in the fall of 1881, I suggested to Mr. Brown that the demand was coming in the planter trade for a check-rower and drill planter combined. Up to this time I knew of no planter that was made where the check-rower and drills were built in connection with the planter, but were both made as a separate attachment, and the planter proper was made for a hand-drop planter exclusively. Mr. Brown asked me if I had any idea for the construction of the machine where the two were combined: I said that I had thought we could build a machine where the check-rower operated the second or lower drop exclusively, and the upper drop or plates could be operated with a chain drive from the rear wheel, and immediately after that he commenced the construction of the machine now in his office. At that time, during the winter months, I had personal supervision over one of the departments, and could not devote all of my time to the pattern room, but was often sent for during the time Mr. Brown was making drafts and patterns for this machine. Hence I do not consider the construction altogether my own, but the idea originated with me."

And in another place he gives the reason why the construction of the machine was not continued as follows:

"In 1880 the business was incorporated under the name of George W. Brown & Co. Mr. James E. Brown, son of George W. Brown, became manager of the business to a very great extent, and was very much opposed to continuing the expense of the business in connection with the pattern room, or improving machines. At this time our old machines were giving the very best of satisfaction, and was the leading corn planter on the market. I know of no other reason why this machine was set aside for the time being. From that time to the present Mr. James Brown has opposed the changing and improving of any of the machines, and at one time, when I hired to the company under a five years' contract, he came to me privately, and said he did not want me to make any improvements or changes in machines without he requested me so to do."

Witness Marcus T. Perrin testified as follows:

"Q. Please look at the machine which I now show you, being the machine marked 'Defendants' Exhibit, Brown 1882 Planter,' and 'Defendants' Exhibit, Rear Frame of Brown 1882 Planter,' and state what it is, if you know. A. That is the machine that Mr. Brown worked at. I think he commenced that as early as 1881, but I am not positive. I know he planted corn with it

previous to his buying the Gilbert farm. Q. When and where did you first see that machine? A. What did you mean by that,—complete machine? Q. Yes; when did you first see it, completed? A. When he planted the crop of corn that he raised on the farm in 1882, I think. The only way that I can fix that date is by his purchase of the Gilbert farm. Q. Did you see that machine in the shop of George W. Brown before it was used in planting corn in the spring of 1882? A. I did. I particularly remember that by his having a board with levers attached to it similar to what he has got there. and he was working at that a long time before he went to work and .completed the machine. Q. Where did you see this machine in the spring of 1882 in actual work at seeding corn? A. On his farm east of the city here. Q. Do you remember where on that farm the cornfield was which was being planted? A. He had one piece of corn east of the house and one south of it. Q. You saw it at work in both pieces, did you? A. Yes, sir. Q. Please explain how it is that the purchase of the Gilbert farm enables you to fix this date. A. I find the date of the Gilbert deed is January 25, 1883. Q. How does the date of that deed enable you to recollect the date on which you first saw this machine used? A. I suppose there was a little more attention paid to the farm. He planted some corn for Swanson with the same machine that year. Q. In what year did he plant corn for Swanson, and upon what farm? A. At the time Mr. Brown bought that Gilbert farm, Swanson had a lease of it, and he bought Swanson's last unexpired year of the lease. The last year Swanson was there he planted corn for him. It must have been the 1884 crop. The crop year commences in March. If a man holds a farm over the first of March he holds it through the year. Q. In what year, then, was this planter used by Mr. Brown in putting in corn on the Gilbert farm for Mr. Swanson? A. It must have been in 1883."

### Witness William A. McCready also testifies:

"Q. Look at the machine now shown you, which is in two parts, the said parts being marked 'Defendants' Exhibit, Brown 1882 Planter,' and 'Defendants' Exhibit, Rear Frame Brown 1882 Planter,' and state if you know what such machine is. A. It is a corn planter. Q. Have you ever seen it before to-day? If so, when first and where? A. I have seen this one, or one similar to it, in the spring of 1882, on the Brown farm. Q. When you say 'on the Brown farm,' have you reference to the farm of George W. Brown that you have heretofore spoken of? A. Yes, sir. Q. You say you have seen this machine or one similar to it. Please. explain a little more fully what you mean by the words 'one similar to it.' A. If this is not the exact one, I can't see any difference between this one and the one that was used. Q. Did you operate this machine or the one like it that you say you saw in the spring of 1882? A. I did. Q. Where did you operate such machine in 1882, for what purpose, and to what extent? A. I operated it on the Brown farm, for the purpose of planting corn; about as near as I can recollect, forty acres. Q. If you remember, please state how the crop was in reference to being satisfactorily planted by such machine. A. I don't remember of there being any complaint. Q. After you were through using it in the season of 1882, what was done with such machine, if you know? A. To the best of my recollection, it was returned to the shop. Q. After the year 1882, did you ever use such machine again? If so, when and where? A. Yes, sir; in the spring of 1883, on the Brown and Gilbert farms. Q. Where was this Gilbert farm that you speak of? A. North of the Brown farm. Q. For whom did you work on that Gilbert farm with this machine in 1883? A. For Mr. Brown,—Mr. George W. Brown. Q. State, according to your recollection, the number of acres planted with this machine on the Brown and Gilbert farms in 1883. A. To the best of my recollection, there was from fifty to sixty acres planted. Q. What is there, if anything, that enables you to fix the years 1882 and 1883 as the ones in which you used such machine? A. Those were the years that I was in Mr. Brown's employ."

These witnesses are corroborated by the witness John Purdy, who assisted in drawing patterns for the machine, and also by the witness William B. Richards, who assisted in hunting this machine out from

among a great many other machines in the third story of the Brown shops. There was evidence, also, that a second machine like the one brought into court was partly made by Brown about the same time.

There can be no doubt that, under the decisions of the supreme court, if these witnesses are to be believed, the making of the machine, and its public use, in 1882 and 1883, more than two years before the complainant's patent was applied for, would constitute a complete anticipation. Aiken v. Dolan, 3 Fish. Pat. Cas. 197, Fed. Cas. No. 110; Coffin v. Ogden, 18 Wall. 120; Worley v. Tobacco Co., 104 U. S. 343; Manning v. Glue Co., 108 U. S. 465, 2 Sup. Ct. 860; Magin v. Karle, 150 U. S. 388, 14 Sup. Ct. 153; Brown v. Davis, 116 U. S. 237, 6 Sup. Ct. 379. It must be conceded that this testimony seems quite cogent and convincing, being given by so many witnesses, with so much circumstantiality of detail, and corroborated by documentary proof identifying the time, and by the actual presence of the machine in court. The court, no less than a jury, should find facts according to the weight of the testimony. If the evidence on the question of anticipation were conflicting or doubtful, then, no doubt, the circumstance that Brown had never applied for a patent or continued the manufacture of the machine might be allowed to turn the scale. But, in the circumstances of this case, we think this court would be unwarranted in allowing that one circumstance, accounted for and explained as it is by the witnesses for appellants, to overrule the sworn and uncontradictory testimony of six unimpeached, and, to all appearances, credible, witnesses.

It was suggested by counsel on the argument that this machine may have been made since this suit was brought by the selection from Brown's garret of parts from different pieces of machinery, but this is a suggestion without any warrant in the evidence, is highly improbable, and against all chances, and scarcely worthy of serious consideration.

There are other interesting questions raised by the record, especially the one in regard to the validity of complainant's invention, it being admittedly a combination of different devices in one machine, all of which are admitted to have been old. But we do not find it necessary to consider any of these questions.

The decree of the circuit court is reversed, and the case remanded, with instructions to enter a decree in favor of the appellants, dismissing the bill for want of equity.