## RUBENS et al. v. WHEATFIELD.

(Circuit Court of Appeals, Seventh Circuit. February 7, 1899.)

### No. 524.

PATENTS—VALIDITY—WAISTBAND FASTENERS.

The Ewig patent, No. 408,300, for an improved waistband fastener, designed particularly for the "fly" of pantaloons, consisting of the combination, with a catch, of a perforated plate having a rounded hood provided with a semicircular slot and shoulders, is void because of anticipation and want of invention.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

This appeal is from a preliminary injunction against infringement of letters patent of the United States No. 408,300, granted on March 6, 1890, to John Ewig, assignor of the complainant, for improvement in waistband fasteners, of which the one part now in controversy is illustrated by Fig. 2 of the draw-

ings here reproduced, together with another diagram showing the plate with the loop unturned, and drawings showing the corresponding parts of the fastener used by the appellants, the Kerngood and Delpy fasteners, that made by the Eagle Manufacturing Company, and other forms here produced for the purpose of illustration:

The specification contains the following statements: "This invention relates to a new and improved fastening for the meeting parts of garments, and is more especially intended for the 'fly' of pantaloons, and is in the nature of an improvement on the device for which I applied for letters patent on the 18th day of June, 1887, which application was allowed the 27th day of June, 1887, and has for its object to provide a fastening that may be quickly and easily applied to the garment, and when so applied the meeting parts of the garments may be readily and securely fastened one to the other. * * * Referring to the drawings, the letter A indicates one member of my fastening, consisting of a piece of sheet metal rounded at one end, and having a semicircular slot in said end. Said slotted and rounded end is bent over and back upon the body of the member, A, to form a hook, B, and is bent so as to leave shoulder, e, projecting beyond the edge of the body, A, for the purpose hereinafter described. * * * The fastening is applied to a garment as follows:

The body portion of the member, A, is placed between the two layers of cloth forming the edge of the garment in such a manner that the hook, B, will be upon the inside of the garment. Stitches are then passed through the perforations, a, and through the cloth. I have found in practice that where the hook, B, is at all wide, the edges of the cloth are not sufficiently supported by the threads, and to remedy this defect I cut away the center of the hook to form a slot, b, as shown in Figs. 1, 2, and 3 of the drawings, and the hook portion, B, is so bent over upon the body portion, A, as to leave shoulders, e, e, projecting beyond the said body portion, A, which allows the two layers of cloth on each side of the member, A, to meet slightly beyond the edge of the member, A, and permits the cloth at its edges to be stitched through said slot, thus not only permitting the cloth to be stitched substantially along its entire edge, but also assisting in firmly securing the member, A, in place. To the edge of the garment opposite the hook, B, is secured the catch, C. As shown in Fig. 1, the catch consists simply of a plate perforated at each end, and secured to the cloth by threads passing through the perforations."

The first claim, of which alone infringement is now asserted, reads as follows: "(1) In a garment fastening, the combination with a catch, C, of the plate, A, having the rounded hood, B, provided with a semicircular slot and the shoulders, e, e, said plate, A, being perforated at a, a, substantially as shown and described, and for the purpose specified."

The prior art in evidence consists of the following patents: Nickolds, 44,815, October 22, 1861; Sherman, 60,579, December 18, 1866; Weinberg, 60,600, December 18, 1866; Hall et al., 141,555, August 5, 1873; Haarvig, 144,334, November 4, 1873; McGill, 162,184, April 20, 1875; Masac, 187,879, February 27, 1877; McCabe, 225,849, March 23, 1880; Traphagan, 290,290, December 18, 1883; Whelan, 294,554, March 4, 1884; Delpy, 347,094, August 10, 1886; Ewig, 375,699, December 2, 1887. Concerning these patents, the brief for the appellants says: "We have exhibited in the record a number of prior patents showing hooks and eyes of almost every variety and shape. So many forms have been employed that the principle has long since been exhausted, and only details of form left—only formal changes—at the time Ewig entered the field. If it be said that the Ewig hook is mounted on a broad, flat, thin plate, it may be replied that so are the hooks of the Sherman 1866 patent, the Haarvig 1873 patent, the McCabe 1880 patent, the Delpy 1886 patent, and the Ewig 1887 patent. If it be said that the Ewig broad, flat, thin plate is provided with thread holes to enable it to be sewed to the garment, it may be replied that this is also true of the Haarvig 1877 patent, the Delpy 1886 patent, and the Ewig 1887 patent. If it be said that the hook proper of the Ewig patent sued on is an open one,—that is, cut out or provided with an opening which permits the cloth to be sewed between the members of the hook,—then it may be replied that this is also true of the Sherman 1866 patent, the Whelan 1884 patent, the Delpy 1886 patent, and the Masac 1877 patent, as well as those hooks made of wire, as the Weinberg 1866 patent. If it be said that the hook proper of the Ewig patent sued on is extended forward a short distance beyond the edge of the plate on which it is mounted before it turns back, which permits the cloth to be projected beyond such edge, and sewed between the members of the hook, then it may be said that this is also true of the Sherman 1866 patent, the Masac 1877 patent, and the Delpy 1886 patent. If it be said that the hook proper of the Ewig patent sued on is mounted on a broad, flat plate near its upper and lower edges, so as to communicate the strain to which it is subjected in use to such plate near its upper and lower edges, it may be replied that this is also true of the Sherman 1866 patent, the Masac 1877 patent, the Whelan 1866 patent, and the Delpy 1886 patent. If it be said that the hook proper of the Ewig patent sued on has its members some distance apart where attached to the plate, but united at the point of the hook, then it may be replied that the same is also true of the Delpy 1886 patent; not to mention the hooks made of wire. If it be said that the eye of the Ewig patent sued on is a bar of considerable length attached at or near each end to the cloth, then it may be said that this is also true of the Masac 1877 patent, the Whelan 1884 patent, the Delpy 1886 patent, and the Ewig 1887 patent. If it be said that the hook and eye of the Ewig patent sued on, considered as a physical thing, and in its entirety, has a broad, flat,

thin plate, that it is provided with holes or openings to enable it to be sewed or attached to a garment, that it is provided with a large opening at its hooked end, that it has the hook part projecting from the plate at two points near its upper and lower edges, that the members of the hook begin to bend backward at a point in advance of the edge of the plate, that the construction permits the cloth to be sewed together in advance of the front edge of the plate between the members of the hook, and that it has an eye consisting of a strip of metal attached to the garment at or near its ends to admit a wide hook, then it may be replied that all of these features are to be found in the Sherman 1866 patent, the Masac 1877 patent, the Whelan 1884 patent, and the Delpy 1886 patent. It is true that some of these patents show hooks and eyes that are employed in connection with other portions of garments or wearing apparel than the waistband of trousers; but this is immaterial, inasmuch as they are applicable for use, if desired, in connection with waistbands. The Sherman 1866 patent shows a buckle applied to belts, but nevertheless it is equally applicable to waistbands. The buckle shown in Fig. 2 of the Sherman patent could be sewed in between the layers composing the waistband of trousers, and the eye portion could be sewed in on the opposite side. The Masac 1877 patent shows a glove fastener, but if we look at Figs. 2 and 3 of the drawings we will see that the parts composing the fastener are equally applicable to use as a waistband fastener. The Whelan 1884 patent shows a hook and eye that can be used as a waistband fastener, although it is not described in connection with such use. The Delpy 1886 patent shows a corset clasp that can be used as a waistband fastener without any change or modification."

Without direct response to these propositions, and without attempt at analysis of the prior art, the brief of the appellee rests the question of the validity of the patent on the opinion of Judge Morris in the case of Blum v. Kerngood, 92 Fed. 992, in the United States circuit court for the district of Maryland, handed down on February 4, 1898, and on the judgment rendered in that court on May 17, 1898, in the suit of Wheatfield, the present appellee, against the Eagle Clasp Manufacturing Company,[1] whereby that company was restrained pendente lite from making or selling the hook described in the bill, "having a semicircular slot and shoulders projecting beyond the edge of the plate," as being an infringement of the Ewig patent, No. 408,300. The opinion of Judge Morris, after summarizing the contents of the file wrapper, proceeds as follows: "It appears by the amended specification, as well as by the amended claim, that the patentee pointed out and claimed the semicircular slot with the shoulders, e, e, as his invention or improvement. His original claim 1, which was broadly for the hook having a slot, was rejected, and the restricted claims for the semicircular slot with the shoulders was allowed. The patent examiners were clearly right in this restriction. A slot was old, but a semicircular slot, made of that shape for the purpose of presenting a straight transverse edge to the stitching, was new; and the bending of the hook so as to form the shoulders beyond the straight edge for the purpose of allowing space for the edges of the two layers of cloth to meet was new as a device for that particular purpose, in connection with a solid body plate. There was nothing new in the projecting ears on each side with perforations for thread. These ears appeared in the patent to Ewig, December 27, 1887, No. 375,699, and are there called a 'lip' or 'projection,' provided with one or more perforations. In the patent in suit it is merely said in the specifications that the body of the hook is provided with perforations for the passage of the threads for securing it to the garment, and in claim 1 that plate A is perforated at a, a, as shown and described. The ears, therefore, which may be used for the perforations, are not covered by anything in the specification and claim, and, in my opinion, in view of the state of the art, and Ewig's previous patent, could not rightly have been. The defendant's hook, which is charged to be an infringement, is like the complainant's hook, except that it does not have the semicircular slot. It has an elliptical slot, which extends as far into the body of the metal as it does into the part which forms the hook; and while it permits the edges of the two layers of cloth to be stitched across, just as the old French hook did, it does not present to the stitching any bearing to

[1] No opinion filed.

resist the pull. It is urged that such an edge is presented by the ears on each side of the hook, and that they are the equivalent of the straight edge cut out in the center of the hook. It may be that on defendant's device the edge of the ears help to remedy the absence of the center straight edge, but it must be remembered that complainant's device, although it has proven highly successful, and has 'gone wonderfully into use by the trade, is not a pioneer invention. Haarvig's patent, 144,334, November 4, 1873, shows a waistband fastening for pantaloons, made of flat metal attached by perforations in ears at each side, and the Weinberg patent, 60,600, December 18, 1866, exhibits a form of hook and eye fastener for the waistbands of pantaloons, and Ewig's patent, 375,699, December 27, 1887, was a device for this same purpose. There was nothing, therefore, new in the substitution of a hook and eye device of any known form for buttons for this purpose. Patentable novelty was restricted to a new form of device, or an improvement 'on an old form, requiring invention. All forms had for their object to resist strain, to keep device securely in place, to be sightly in appearance, and moderate in cost. In the device now in suit nothing distinguishes it from Ewig's prior patent but the semicircular slot made in the form which remedies the difficulty which Ewig says he encountered when using a wide hook, viz. that the edges of the cloth were not sufficiently supported by the threads, and with the advantage, when used, that it resulted in the body plate of the hook being more securely held in place. This semicircular slot is all that I find that was patentable in complainant's device, and, treating the patent in suit as a good patent for that, I do not find that the defendant infringes, and the bill must be dismissed."

In the opinion delivered below, which also seems not to have been reported, it is said: "It is perfectly clear that the transverse edge has a functional advantage, and, as I understand Judge Morris' opinion, he distinctly says that the word 'semicircular,' when used to describe the slot, meant a slot having this straight edge. This being true, I think the infringement is clear. The circuit court of appeals for this circuit has held that it is the duty of the trial judge to, enforce the judgments of other courts, and to grant preliminary injunctions, unless new defenses are brought forward. The inquiry of the validity of the patent is no longer an open one with me after having been decided in the affirmative by Judge Morris; and, while it is true that in neither the Kerngood nor the Eagle Case did Judge Morris affirm the validity of the patent in distinct terms, I think he did so, in effect, when those two cases are taken together. The only question now open before me is, is there anything before me which was not before Judge Morris, which would have changed his judgment? The only two patents relied upon by defendant are Sherman, 60,579, and Delpy, 347,094. The first of these was not before Judge Morris in the Kerngood Case, and the latter, although before him, was not commented upon by him in his opinion; but I am very clear that neither of these patents would have altered his judgment."

Ephraim Banning and T. A. Banning, for appellants.

John P. Wilson, Arthur Steuart, and N. Grier Morse, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge, after stating the case, delivered the opinion of the court.

In Stover Mfg. Co. v. Mast, Foos & Co., 32 C. C. A. 231, 89 Fed. 333, where, as here, the appeal was from an interlocutory order of injunction granted upon ex parte affidavits, and on the authority of a prior decision in another circuit, we treated the decision of the supreme court in Smith v. Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, as meaning that the review in this court in such cases should go to the merits, and added the suggestion that: "This being the scope of the appeal, the logical inference would seem to be that every application to a circuit court for an injunction or temporary restraining order

should be considered on its merits, and that a ruling or opinion of another court upon any question involved should be given only its just and reasonable weight according to the circumstances." We therefore pass to the merits of this case.

It cannot be said that in a disputed case, or on a contested hearing, before the decision below was made, the patent in suit had been adjudged valid. In Blum v. Kerngood, 92 Fed. 992, the patent was denied the merit of a pioneer invention, and, on the narrow margin of novelty conceded to it, the finding and decree were that there had been no infringement. Upon the question of validity it was not necessary to decide definitely, and it is not shown that the decree entered contained anything upon the point. Whatever expression there is in the opinion on that question is only an assumption or concession that the patent was valid to the extent of the very narrow construction put upon it, and at most is entitled to the weight of a dictum. The gist of the opinion as understood below and as contended here is that the word "semicircular," when used to describe the slot, meant a slot having a straight edge; and it is further contended—as it must be to make the proposition effective—that the straight edge of the slot must be the edge of the body plate over which the two layers of cloth are to be extended and stitched. Promptly upon the handing down of that opinion, suit was brought against the Eagle Clasp Manufacturing Company in the same court, and that company, according to the affidavit of the appellee, "being satisfied from an examination of the patent and the opinion of Judge Morris in the Kerngood Case that its clasp was an infringement of the patent, and being unable to advance any other defense, etc., was powerless to prevent the issuance of a preliminary injunction against it, and the court   *   *   *   entered a decree that the hook manufactured by the Eagle Clasp Company was an infringement of the first claim of the patent." The affidavit also says "there was no collusion" in the case, but it is evident that there was submission without contest, and that the judge gave the decree without further consideration of the question of the validity and scope of the patent. If the essential feature of the patent was that the edge of the plate next to the slot should be straight, and the slot was described as semicircular for the simple purpose of defining that line, —the form of the slot in other respects being immaterial,—the obvious suggestion is that a remarkably roundabout and questionable way was sought after to express a meaning which might have been easily declared in direct and plain words. It seems clear, however, that the word was used for no such indirect purpose. The file wrapper shows that, as first presented, neither the specification nor claim called for a slot of particular form, but simply for a hook with a slot; but by the same words now found in it the specification required that the center of the hook be cut away to form a slot through which the cloth could be "stitched substantially along its entire edge," and it follows that the amendment whereby the slot was described and claimed as semicircular could not have been studied out for the purpose of describing a straight edge for the body plate along which the overlapping cloth could be stitched. The idea of overlapping

and stitching the cloth, so as to gain all the advantages now deemed possible, was already clearly expressed in the specification; and, a straight edge being the simplest form for that purpose, it is to be presumed, in the absence of evidence on the point, that the original drawings showed a slot with an edge of that kind at its base.

But, while the specification and drawings of the patent indicate clearly enough the intention that the straight side of the semicircular slot should be next to the body of the plate, it is not explicitly so stated, and manifestly that position is not essential to the successful accomplishment of the avowed purpose of the invention. An exact semicircle of course must have a straight side equal to the diameter of the corresponding circle, but, for all that is said in the specification, that side may be the top as well as the base of the slot, and in either place is equally within the terms of the claim, unless, indeed, by a construction equivalent to a denial of invention, the claim is to be limited to the exact forms of plate and hook shown in the drawing; and, if that be done, the charge of infringement has no foundation. That the straight edge is not necessary to permit the stitching of the edges of the cloth inside of the loop, and for the purpose specified, it is easy to see. That could be done where, as in Blum v. Kerngood, the slot is elliptical, even though it extends into the body of the metal as far as into the hook, by stitching not directly across, as in that case it seems to have been thought necessary to do, but along the curved edge of the plate. So done, the stitching, without doubt, would furnish an adequate "bearing to resist the pull." Especially would this be so if the lower end of the slot be placed, as in one of the illustrative cuts, more nearly in line with the upper edges of the ears on either side of the hook; and in proportion as the elliptical curve is made, as it might be, to approximate a straight line, the resistance afforded by the stitching will be more nearly the same as if the line were straight. And since the Kerngood device, though manifestly performing, or capable of performing, in an appreciative degree, the function of the patented device, yet did not infringe, because the lower end of the slot was elliptical and cut into the body plate below the position of the straight line of the patent as much as above that line, is it to be inferred that a change in the position and in the radius of the ellipse, so that the lower part thereof would be more nearly coincident with a straight line, would have been held to constitute an infringement? If so, by what rule is it to be determined when a noninfringing curved line, though performing from the start the requisite function, becomes, by change of position and of degree of curvature, an infringement of a claim for a straight line? The evident impossibility of such a rule demonstrates the fallacy of an attempt to state a substantial distinction between the Kerngood device and that of the patent in respect to the possibility of stitching the two layers of cloth along the lower edges of the two forms of slot in a manner to afford effectual resistance to the pull, and to subserve the other intended functions. The difference, in respect to any of the functions, is only in degree, and does not affect the essential character of the devices. It is evident, too, that fasteners might be constructed in

various forms so as to have the so-called semicircular slot, but with body plates having other than straight edges within the slots, and yet available for all the supposed functions of that edge. As illustrated in one of the foregoing drawings, the edge might be notched or undulating; and the other forms illustrated afford examples any one of which, in respect to the particular functions in question, is the plain equivalent of the form of the patent, and in all reason should be said to infringe, if the patent had real merit. It is to be observed, further, that, while the word "semicircular" is one of definite mathematical meaning, it manifestly was not used in this patent in the strict sense. The slot shown in the drawings does not approximate a semicircle, unless reference is made only to the portion of the slot within that part of the loop which is turned back upon the plate; and, if that be the reference, it does not include the straight edge at the base, which alone has been treated as important. The reference, however, it seems clear, is to the entire slot, and that, instead of being semicircular, has a straight depth between parallel lines well-nigh equal to twice the radius of the semicircular top with which it is crowned. The base of the true semicircle, in the drawing of the patent, as well as in the other cuts shown, we have indicated by a dotted line, and there is nothing in the specification and claim which requires that the portion of the slot outside of the semicircular part shall be of any particular shape. As illustrated in the patent, it is a parallelogram, but it may be in any of the forms illustrated, and in many other conceivable shapes, without impairing the efficiency of the fastener in any respect deemed important. By the opinion in Blum v. Kerngood no one of those designs could be deemed an infringement, but, if the patent had genuine merit, it ought to cover them all. Our conclusion is that it contains nothing essentially new. The straight edge is fully anticipated in the Delpy clasp, and if it could, in any stage of the art, have been an inventive act to add to that device projecting ears, the anticipation is found in the Ewig patent of 1887, as well as in other earlier patents. There is certainly no merit in so bending a loop as to leave curved shoulders projecting beyond the body of the plate. It would be difficult to do the bending in a way to leave the necessary space between the plate and the loop, without producing the projecting shoulders. The prior art seems to admit of no theory on which the patent can be deemed valid. The decree below is therefore reversed.

Judge SHOWALTER did not participate in this decision.