## SWIFT & CO. v. RECONSTRUCTION FINANCE CORPORATION.

No. 47C973.

United States District Court
N. D. Illinois, E. D.

Dec. 17, 1948.

630

For former opinion, see 79 F.Supp. 546.

Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., for plaintiff.

Otto Kerner, Jr., U. S. Dist. Atty., of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

This court in the above-captioned case, decided by it May 21, 1948, 79 F.Supp. 546, is now considering the question of the binding effect of and the weight and significance which it must accord to the decision of the Emergency Court of Appeals in the case of Wm. Schluderberg-T. J. Kurdle Co. v. R.F.C., 169 F.2d 419, decided July 29, 1948, in which case certiorari was denied by the Supreme Court of the United States October 18, 1948, 335 U.S. 846, 69 S.Ct. 68. Is the opinion in the Schluderberg-Kurdle case binding upon this court and is this court obliged to follow it?

Section 204(c) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 924(c), provides that the Emergency Court of Appeals "shall have the powers of a district court with respect to the jurisdiction conferred on it by this Act; * * *."

My understanding of the law is that I am bound to follow the decisions of other District Courts or of the Circuit Courts of Appeal of other circuits only to the extent that their reasoning may be persuasive.

In the case of Mast, Foos & Co. v. Stover Mfg. Co., 177 U.S. 485, 488, 20 S.Ct. 708, 44 L.Ed. 856, the Circuit Court of Appeals for the Seventh Circuit, 89 F. 333, in holding a particular patent invalid refused to follow a prior decision of the Circuit Court of Appeals for the Eighth Circuit, Mast, Foos & Co. v. Dempster Mill Mfg. Co., 82 F. 327, which had sustained the validity of the same patent. The trial court reversed by the Circuit Court of Appeals for the Seventh Circuit had followed the decision of the Eighth Circuit on the ground that it was bound to do so under the rule of comity. In sustaining the decision of the Circuit Court of Appeals for the Seventh Circuit, Justice Brown said:

"* * * Comity persuades; but it does not command. It declares, not how a case shall be decided, but how it may with propriety be decided. It recognizes the fact that the primary duty of every court is to dispose of cases according to the law and the facts; in a word, to decide them right. In doing so, the judge is bound to determine them according to his own convictions. If he be clear in those convictions, he should follow them. It is only in cases where, in his own mind, there may be a doubt as to the soundness of his views that comity comes in play and suggests a uniformity of ruling to avoid confusion, until a higher court has settled the law. It demands of no one that he shall abdicate his individual judgment, but only that deference shall be paid to the judgments of other coordinate tribunals. Clearly it applies only to questions which have been actually decided, and which arose under the same facts." [177 U.S. 485, 20 S.Ct. 710.]

In the case of In re Madonia, D.C., 32 F.Supp. 165, 166, Judge Holly said:

"Some courts have very narrowly construed statutes providing for appeals, but the decisions of courts other than the Circuit Court of Appeals of this Circuit or the Supreme Court of the United States are not authorities which I am bound to follow. They have persuasive force only in so far as their reasoning appeals to me."

To be sure the Supreme Court of the United States had denied certiorari in the Schluderberg case, but that fact in no way adds any more binding force to the decision of the Emergency Court of Appeals. In House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 521, 89 L.Ed. 739, the Supreme Court said:

"* * * As we have often said, a denial of certiorari by this court imports no

expression of opinion upon the merits of a case."

The Supreme Court repeated this statement in Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982.

The holding in the Schluderberg case has not convinced me that I was in error in my decision on May 21st, 1948, in the Swift case. I carefully studied the pleadings and the briefs and analyzed all of the directives, regulations and statutes involved, and I was then convinced and still am that I was correct in the conclusions which I then reached, and anything in the opinion of the Emergency Court of Appeals, a court with the same jurisdictional power as this District Court, does not lead me now to decide that my conclusions in the Swift case were erroneous.

In the Schluderberg case counsel for plaintiff conceded that Announcement No. 1 and the implementing letter of April 29, 1947, were regulations or orders under Section 2(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 902(e), and therefore were subject to administrative protests and subsequent review by the Emergency Court of Appeals. In the Swift case whether or not they were such regulations or orders was a contested issue, and after careful consideration of the same this court decided that neither the announcement nor the implementing letter was a regulation. The Schluderberg case was not an action brought under Section 2(m) but rather was an administrative proceeding brought under Sections 203, 204 of the Emergency Price Control Act, 50 U.S. C.A.Appendix, §§ 902(m), 923, 924. Plaintiff in the Schluderberg case conceded that Announcement No. 1 and the implementing letter of April 29, 1947, were regulations or orders. In the case before me I sustained plaintiff's contention that neither Announcement No. 1 or the letter of April 29, 1947, was a regulation. Counsel for Schluderberg contended that what they regarded as a regulation was invalid. Plaintiff in the Swift case did not challenge the validity of a regulation or order issued under Section 2 of the Emergency Price Control Act, over which it is agreed the Emergency Court would have jurisdiction, but rather contended that the announcement and letter here involved were not regulations at all, and in reality amounted to a condition or penalty not authorized under the provisions of the Act, and this court sustained that position, saying [79 F.Supp. 553]:

"It (Swift & Co.) insists that Announcement No. 1 was not a regulation or order authorized by section 2(e) but on the contrary amounts to a condition or penalty not authorized by the provisions of the Act, and therefore brings its cause of action squarely within the jurisdiction of this court, with which contention I agree."

This court held that Announcement No. 1 and the implementing letter were contrary to and inconsistent with the directives and statutory provisions providing for the payment of livestock slaughter subsidies. In the Swift case defendant contended that Announcement No. 1 and the letter were interpretations rather than regulations or orders, while in the Schluderberg case it contended that they were regulations, the validity of which was being contested, and over which the Emergency Court of Appeals of course had jurisdiction. The Emergency Court of Appeals has itself held it did not have jurisdiction over matters of interpretation but that the District Courts were the appropriate forum for the determination of the validity of interpretations. Gordon v. Bowles, Em. App., 153 F.2d 614; Bowles v. Simon, 7 Cir., 145 F.2d 334.

In the Schluderberg case plaintiff conceded and contended that the Emergency Court of Appeals had exclusive jurisdiction, but in the Swift case that was one of the contested issues. That issue was never presented to the Emergency Court of Appeals in the Schluderberg case, the court there stating "our jurisdiction has not been challenged." 169 F.2d 419, 420. Plaintiff in the Schluderberg case filed the claim forms demanded by RFC in its letter of April 29, 1947, and invoked the O.P.A. protest procedure and upon denial of their protest invoked the appellate jurisdiction of the Emergency Court. The Schluderberg case was not an action brought under section 2(m) of the Emergency Price Control Act, but rather was an administrative proceeding brought under Sections 203, 204 of the Emergency Price Control Act. In the

Swift case also the court's attention was called to the fact that the Emergency Court of Appeals had repeatedly held that it had no continuing jurisdiction under the Expired Price Control Act in the absence of a pending enforcement proceeding brought under section 205 of the Price Control Act, 50 U.S.C.A.Appendix, § 925. In the Schluderberg case the Emergency Court did not pass upon this question and seems not to have even considered it.

In the Schluderberg case plaintiff conceded that the livestock slaughter subsidy in question was a meat or consumer's subsidy and not a producer's subsidy, while in the Swift case that was one of the principal controverted questions, and upon which this court reached a conclusion contrary to the concession made by plaintiff in the Schluderberg case. No contest was presented before the Emergency Court on this fundamental question of whether this was a consumer's subsidy or a producer's subsidy, which was considered at length by this court in the Swift case. The Emergency Court quoted counsel's admission in its opinion, saying:

"* * * Complainant indeed recognizes in its brief: 'These (subsidy) payments, while in the form of slaughter payments, were not compensation for the slaughter conducted under price control but for the meat sold under price control. There was no loss occasioned by the slaughter itself for which compensation might legally be provided under section 2(e) of the Act. The use of the slaughter basis for payments was mere form and was employed for convenience. The compensation was required because of the low level of the maximum selling prices for meat and the compensation was for the meat sold under price control.'"

However, in the Swift case, heard and decided two months earlier, this fundamental issue was contested, and after careful consideration of the entire question this court reached a different conclusion, saying:

"I believe that the entire livestock slaughter subsidy program was expressly designed to operate for the benefit of the livestock producer. I believe that RFC itself so interpreted the original Act and the Extension Act of 1946, because it honored subsidy claims for slaughter up to June 30, 1946, and paid claims for actual slaughter occurring after September 1, 1946, and up to October 15, 1946. RFC makes no claim that at the termination of Regulation No. 10 on October 14, 1946, plaintiff had not fully complied with all subsidy and price regulations. I am of the opinion that the interpretation of Regulation No. 10 now urged by RFC is repugnant to the clear and unambiguous language used in Regulation No. 10. Nowhere in the Regulation can I find anything contrary to the express language which provides that the subsidy became due and was payable at the time the slaughtering took place. The producer had previously secured the benefit of the subsidy because it was included in the higher price which he had received for the sale of his livestock. The subsidy was made payable at the slaughtering level for administrative purposes only, the benefit thereof accruing to the producer because the controlled prices at which he could sell his livestock took the subsidy into consideration. The courts have frequently held that the meaning of a statute must in the first instance be sought in the language in which the Act is framed, and if that is plain, and if the law is within the constitutional authority of the law making body which passed it, the whole function of the courts is to enforce it according to its terms.

\* \* \* \* \* \*

"The subsidy was to be paid not to the consumer, not to the retailer, not to the wholesaler, not on meat inventories of the slaughterers, but was to be paid to the slaughterer for the killing of the live animal, and from which payment the producer had already secured the benefit at the time the slaughterer purchased the livestock from him. The directive provided that the slaughterer was to be reimbursed when he slaughtered the livestock for which he had passed on to the producer the subsidy benefits, as required by Section 7003.10(b). What the producer received was as much a livestock subsidy as if the Government itself had made the payment directly to the producer."

In arriving at its conclusion in the Swift case this court considered former decisions of the Emergency Court of Appeals holding that the subsidy was a producer's subsidy. In its opinion in the Swift case this court said:

"RFC now insists that under Regulation No. 10 the subsidy here under consideration is and always has been a consumer's meat subsidy and therefore should not have been paid to the slaughterers unless the meats processed from livestock were sold to consumers during the existence of retail ceiling prices.

"With this I do not agree. I can find no such provision, either directly or by inference, in Regulation No. 10. Both Regulations 3 and 10 provided expressly that the subsidy was payable at the time of the slaughter of the livestock. The Emergency Court of Appeals so held in Armour & Company v. Reconstruction Finance Corporation, Em.App., 162 F.2d 918, 922, saying:

" 'We have heretofore held that the livestock slaughter subsidy was basically a production subsidy and as such was authorized by Section 2(e) of the Act.' "

In the case of Earl C. Gibbs v. R.F.C., 1948, 169 F.2d 654, 656, decided by the Emergency Court of Appeals after the Schluderberg case, the RFC had withheld payment of subsidy claims in an amount equal to a sum which had been paid by the subsidy claimant in an OPA office settlement of alleged sale of meats at overceiling prices. Livestock Regulation No. 3 provided that deductions were to be made as against subsidy payments where the Price Administrator had determined that a claimant had wilfully violated an applicable price regulation or had certified that it had been determined in a civil proceeding that the subsidy claimant had violated a substantive provision of the Regulation. The RFC made a deduction from the claimant's subsidy claims despite the fact that the Price Administrator had neither determined nor certified that the claimant had wilfully violated an applicable price regulation, or that it had been determined in a civil proceeding that the claimant had violated a substantive provision of the

regulation. RFC there contended that it had inherent authority to make the deduction. Its argument was based substantially on the same grounds urged here that the subsidy and regulation program was an integral part of the price program. In that case the court said:

"The respondent urges, however, that it had inherent authority, wholly irrespective of Revised Regulation No. 3, to deduct from the complainant's subsidy payments a sum equal to its admitted overcharges. This right, it says, is just as fundamental as its right to reduce a subsidy claim for arithmetical error. We do not agree."

The Emergency Court held that while there was a relationship between the subsidy program and the pricing program, they were not inextricably bound together. The court then went on to say that the livestock slaughter subsidy program was "basically a production subsidy". Thus once preceding the Schluderberg decision and once subsequently, as I read the opinions, the Emergency Court of Appeals has held that the livestock slaughter subsidy program was basically a production subsidy.

In the Gibbs case, supra, as well as in the Schluderberg case, the RFC insisted that it possessed "inherent authority" to deny a livestock slaughter subsidy claim or to reduce it in amount, depending upon the interrelation of the subsidy program and the pricing program. The Emergency Court in the Schluderberg case held that complainant's right to claim subsidies on account of livestock slaughtered during the period September 1, 1946, to October 14, 1946, was, under the law, subject to an inherent condition subsequent that the meat derived from such slaughter must be disposed of prior to the removal of price controls. In the Gibbs case that court held that the RFC possessed no inherent authority to invalidate a subsidy claim because the power to invalidate subsidy claims was within the scope of Revised Regulation No. 3 and was limited to the cases expressly provided for by the regulation, the court saying:

"These express directions and limitations as to those claimants otherwise en-

titled to the livestock slaughter subsidy who may be denied subsidy payments because of having violated price regulations were, as we have seen, laid down with the approval of the officials entitled to determine the terms and conditions of subsidy payments. They clearly exclude the idea that a claimant whose violation of a price regulation had been wholly inadvertent and in good faith and who had immediately after self discovery of it made settlement for his overcharge without the necessity of a civil proceeding being brought against him may nonetheless be denied subsidy payments because of the violation. Indeed, to hold that the subsidy paying agents, Defense Supplies Corporation and its successor Reconstruction Finance Corporation, had inherent authority to invalidate the subsidy claim of such a claimant would render Section 7003.10(a) of the regulation wholly superfluous and meaningless. We conclude that the respondent had no such independent inherent power as it now claims but that its power to invalidate subsidy claims otherwise within the scope of Revised Regulation No. 3 is limited to the cases expressly provided for by the regulation."

Thus it is apparent that the Emergency Court in the Gibbs case held that the RFC had no inherent authority to invalidate the subsidy claim of any claimant. See also Belle City Packing Company v. R. F. C., 169 F.2d 413, 416, decided by the Emergency Court in 1948, where that court said:

"The interpretation now urged by respondent (RFC) would truly convert the regulation, with its accompanying reporting form, into a booby trap to snare the unwary business man. It might have been reasonable to enlarge the affiliation provisions of the subsidy regulation so as to cover loans or advances by or to stockholders, particularly majority stockholders, of non-processing slaughterers or of 'processors or purveyors of meat'; but that is not the way the regulation was written."

Relying on these decisions I assume that an "inherent condition" may not be read into the subsidy regulations, and that only conditions of payment which are clearly and affirmatively set out will be enforced. In the Swift case this court, after con-

sideration of the directives, the statutes and authorities, held that Livestock Slaughter Regulation No. 10 was clear and unambiguous and was not subject to having read into it the "inherent condition" that the subsidy was not payable on meat inventory.

Plaintiff in the Schluderberg case conceded and urged that the subsidy was a consumer's or meat subsidy designed to compensate slaughterers for the roll-back of maximum prices on meats promulgated by the Price Administrator in June of 1943. In the Swift case this court analyzed the directives, especially those provisions requiring the monthly average purchase payments for livestock to be within the minimum and maximum range, which this court believed was for the benefit of the livestock producer. The subsidy claim forms issued by RFC under Regulation No. 10 required certification by the claimant that his purchases during each month were within the maximum and minimum, generally described as an "overriding" ceiling, and this court held that this requirement was part of the plan to assure that the benefit of the subsidy would reach the producer.

Under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., publication in the Federal Register of all regulations, orders or documents is required. Defendant RFC admits that Regulation 10 was not so published, but that it was in reality filed with the Federal Register, which RFC insists is all that the Act requires, and that as a matter of fact each applicant received personal notice of Announcement No. 1 and Regulation No. 10.

■ After careful study of the reasoning of the Emergency Court of Appeals in its opinion in the Schluderberg case, and a careful reconsideration of the decision by this court in the Swift case, and having in mind the different factual situation involved in the two cases, I am not convinced that an erroneous conclusion was reached in the case before me. I have the highest regard and respect for the distinguished and eminent members of the Emergency Court of Appeals and for their ability and the soundness of their views and judgment, and I recognize their fa-

miliarity with the Emergency Price Control Act in all of its phases, but I nevertheless do not believe that the issues decided by that court in the Schluderberg case and those decided by me in the Swift case were identically the same. At the time the opinion in the Swift case was handed down I was convinced I had reached a correct conclusion according to the law and the facts before me, and until that conclusion is overruled by a higher court, I find no reason for disturbing it.

I have also carefully considered the Master's Report, together with the objections and the briefs submitted in opposition to and in support thereof, and I am convinced that the Master's Report is correct, notwithstanding that in its objections defendant points out in eleven different instances that the report is clearly immaterial and irrelevant, and in twenty-six instances that the Master is clearly erroneous. The objections to the Master's Report are overruled, and the Master's Report is confirmed in all respects.